JEREMIAH GARNETT, APPELLANT, V. JAMES A. MEYERS ET
AL., APPELLEES.*

FILED JULY 1, 1902. No. 10,304.

1. Note: MORTGAGE: CONTEMPORANEOUS EXECUTION: CONSTRUCTION:
    NOTICE OF CONTENTS. A note, and mortgage securing it, made
    contemporaneously, are to be construed together as to all per-
    sons chargeable with notice of their contents and their relation
    to each other.

2. ———: PAYMENT: OWNER: AGENT: BURDEN OF PROOF. If the
    maker of a negotiable note pays the same to one who does not
    and can not produce the paper, he thereby assumes the burden
    of proving that the party to whom he pays the money is the
    owner of the paper, or the agent of the owner authorized to
    receive the money for him.

3. Mortgage: AGREEMENT TO PAY TAXES AND ASSESSMENTS. The
    agreement in a mortgage to pay "all the taxes and assessments
    levied upon said premises and all taxes and assessments levied
    upon the holder of the mortgage for and on account of the
    same," will not render the note which it is given to secure
    non-negotiable.

*Rehearing allowed. Judgment below affirmed. See opinion, page
287, *post.*

APPEAL from the district court for Antelope county. Heard below before ROBINSON, J. *Reversed.*

*Claude C. Flansburg, Charles Riley* and *R. O. Williams,* for appellant:

One can not plead agency from a mere course of dealing or custom, unless one has had knowledge of such course of dealing or custom, and has relied upon the same to establish the agency pleaded.

The appellee in this case can not plead an agency of which he had no knowledge from a course of dealing which never even suggested itself to him until this suit was commenced. This principle is laid down in *Crane v. Gruenewald,* 24 N. E. Rep. [N. Y. App.], 456.

No mere course of dealing between third parties can bind the plaintiff, unless with his knowledge or approval.

Ostensible authority must arise by some affirmative act of the principal conferring apparent authority on the alleged agent, or with knowledge of the agent's conduct. He must have been guilty of some negligence by which he is estopped. *Frey v. Curtis,* 52 Nebr., 406; *Milwaukee & Wyoming Investment Co. v. Johnston,* 35 Nebr., 554; *Union Stock Yards Co. v. Westcott,* 47 Nebr., 300.

*N. D. Jackson, contra:*

The note and mortgage having been executed at the same time, and with reference to the same subject-matter, must be construed together as one contract. *Grand Island Savings & Loan Ass'n v. Moore,* 40 Nebr., 693; *Seieroe v. First Nat. Bank,* 50 Nebr., 612; *Salisbury v. First Nat. Bank,* 37 Nebr., 872; *Muzzy v. Knight,* 8 Kan., 456; *Meyer v. Graeber,* 19 Kan., 165, 166; *Lockrow v. Cline,* 46 Pac. Rep. [Kan.], 720; *Brooke v. Struthers,* 68 N. W. Rep. [Mich.], 272, 275; Daniels, Negotiable Instruments, sec. 156. It follows, therefore, that the conditions and stipulations contained in the mortgage, each and every one of them, become as much a part of the note as if they were

written on and embodied therein. And if the conditions contained in the mortgage are such that if they were contained in the note they would render the note non-negotiable, then the note becomes non-negotiable by reason thereof. *Brooke v. Struthers, supra; Walker v. Thompson,* 66 N. W. Rep. [Mich.], 584; *Lockrow v. Cline, supra.*

The conditions found in the mortgage with reference to the payment of taxes by the mortgagor, both on the land itself and such taxes as may be assessed against the holder of the mortgage, render the amount which may be due at the maturity of the note uncertain, and take the contract out of the domain of negotiable paper. *Walker v. Thompson, supra; Brooke v. Struthers, supra; Lockrow v. Cline, supra; Farquhar v. Fidelity Ins. Co.,* Fed. Case, No. 4676; *Howell v. Todd,* Fed. Case, No. 6783.

And so with reference to the agreement against waste, that the buildings, fences and other improvements shall be kept in repair. All such agreements and conditions pertain to non-negotiable contracts, and it seems clear to the writer that the judgment of the district court is right upon the sole ground that the contract in suit is non-negotiable, and that payment thereof was made in good faith, and without knowledge of the fact that it had been negotiated.

We have not been favored with the testimony of the plaintiff. He seems to be content to rest his chances of compelling the defendant to make a second payment of the note in suit upon the inability of the defendant to bring home to him an actual knowledge of the fact that the Globe Investment Company was collecting money that belonged to him.

It is not important whether the plaintiff actually knew that the defendant was paying money which belonged to him to the Globe Investment Company. It is sufficient that John Stuart & Company, Limited, who were his agents for the collection of money, knew that the Globe Investment Company was performing the acts which they, as the agents of the plaintiff, had the right to perform. It is sufficient if they had previously acquired such knowledge

and then had it in mind. Meecham, Agency, secs. 718-721; *Distilled Spirits,* 11 Wall. [U. S.], 356, 367; *Fairfield Savings Bank v. Chase,* 72 Me., 226, 229; *Chouteau v. Allen,* 70 Mo., 290; *Lebanon Savings Bank v. Hollenbeck,* 29 Minn., 322; *Merriam v. Calhoun,* 15 Nebr., 569.

The rule of law found in the class of cases cited as authority by counsel for plaintiff has no application to facts shown to exist in this case.

An analysis of the cases as a class shows that in most of them the defendants had actual knowledge of the rights of persons other than those with whom the business was transacted, while in others no course of dealing is shown except payment of interest, which standing alone is not sufficient evidence of authority to collect the principal. The cases so far as the writer's attention have been called to them, are: *Eggert v. Beyer,* 43 Nebr., 711; *Stark v. Olsen,* 44 Nebr., 646; *Bull v. Mitchell,* 47 Nebr., 647; *Richards v. Waller,* 49 Nebr., 639; *Porter v. Ourada,* 51 Nebr., 510; *Herbage v. Moodie,* 51 Nebr., 837; *Frey v. Curtis,* 52 Nebr., 406.

SEDGWICK, J.

This action was brought to foreclose a real estate mortgage. The trial court found for the defendants, and entered a decree accordingly. The plaintiff brings the record here on appeal.

It is conclusively established by the evidence that on the 31st day of July, 1889, the defendants Meyers and wife executed and delivered to the Globe Investment Company their note for $550 and the mortgage sought to be foreclosed to secure the payment of said note; that on the 19th day of September, 1889, the Globe Investment Company indorsed the note in blank, executed an assignment in blank of the mortgage, and for a valuable consideration, and in the usual course of business, sold said note and mortgage, and delivered the same, with said assignment, to John Stuart & Co., who afterwards, in the same year, without further indorsement or assignment in writing, in

the same manner, and for a valuable consideration, sold the note and mortgage, and delivered the same, with said assignment, to the plaintiff. The assignment of the mortgage was never filed for record, nor recorded, in the county where the land lies. Afterwards, and before the payment hereinafter mentioned, the mortgagors conveyed the mortgaged premises to the defendant Henry Woerdhoff, subject to the mortgage, who, in August, 1894, without any notice or knowledge that the Globe Investment Company had transferred the note and mortgage, paid the mortgage debt to said company.

It is insisted that the contract upon which this action was brought is not negotiable, and that, as the mortgagor had no notice of the assignment, payment to the original mortgagee is a satisfaction of the claim. The note, otherwise in the usual form of a promissory note, has the following memorandum upon its face: "This note is secured by a first mortgage on the N. W. ¼ sec. 7, tp. 23, R. 6 west, 6th P. M., Antelope county, Nebraska." And the mortgage contains, among other things, the following provision: "The said parties of the first part hereby agree to pay all the taxes and assessments levied upon the said premises and all taxes and assessments levied upon the holder of this mortgage for and on account of the same * * * when the same are respectively due; and if not so paid, the said party of the second part, or the legal holder or holders of said note may, without further notice declare the whole debt hereby secured due and payable at once, or may elect to pay such taxes, assessments * * * and the amount so paid shall be secured by this mortgage and may be collected in the same manner as the principal debt hereby secured, with interest at the rate of ten per cent per annum. But whether the legal holder or holders of said note elect to pay such taxes, assessments * * * or not, it is distinctly agreed that the legal holder or holders of said note may declare the debt thereby secured due and immediately cause this mortgage to be foreclosed." These two instruments, having been executed at the same time

and transferred together, must be construed together. See *Consterdine v. Moore, post,* page 291; *Grand Island Savings & Loan Ass'n v. Moore,* 40 Nebr., 686; *Seieroe v. First Nat. Bank of Kearney,* 50 Nebr., 612. The long-established and general rule is that if the note is in form negotiable, a sale and transfer of the note transfers the mortgage; and a note secured by mortgage may be negotiable, and the purchaser thereof may be an innocent purchaser and entitled to protection as such in the collection of his debt, whether by suit upon the note alone or by foreclosure of his securities. But the note and mortgage are two contracts; that is, though executed at the same time, and construed together, they are to serve two purposes; one is to evidence the principal indebtedness, and the other to secure its payment. Usually the note serves the one purpose and the mortgage the other. It is well settled in this state that, although a note is absolute in form, every provision affecting the same, the amount, or manner of payment,—that is, the contract, in regard to the indebtedness itself, contained in a mortgage given to secure it, and made contemporaneously,— affects the note in precisely the same manner, and to the same extent, as though included with it on the same piece of paper, as to all persons chargeable with notice.

One of the essential elements of negotiable paper is certainty as to the amount to be paid. Daniel, Negotiable Instruments, sec. 53; Edwards, Bills & Notes, sec. 153; Story, Promissory Notes, sec. 20; Randolph, Commercial Paper, sec. 104. So strictly have the courts adhered to this rule that it has been held that a bill of exchange for the payment of a certain sum with exchange is not negotiable. *Culbertson v. Nelson,*[*] 61 N. W. Rep. [Ia.], 854; *National Bank of Commerce v. Feeney,*[†] 80 N. W. Rep. [S. D.], 186. While there is a conflict of authority as to the effect of the provisions for exchange, such conflict does not arise from any diversity of opinion as to the necessity of certainty of the

---

[*]27 L. R. A., 222, 57 Am. St. Rep., 266.
[†]46 L. R. A., 732, 76 Am. St. Rep., 594.

Garnett v. Meyers.

amount to be paid, but, rather, from a difference of opinion
as to whether such provisions render the amount uncertain.
The question is not here involved, and is not decided.  The
agreement to pay taxes on the lands mortgaged or to keep
up the improvements, or not permit or suffer waste thereon,
or provisions of like nature, contained in the mortgage, do
not destroy the negotiability of the note, because they do
not relate to the principal indebtedness, and do not render
the amount thereof uncertain.  Such provisions relate to
the security, which is collateral to the principal indebted-
ness, and are proper provisions of the mortgage as such to
insure the maintenance of the security as originally given.

It is insisted that the clause in question requires the
maker of the note to pay all taxes that may be levied
against the holder of the note on the credit represented by
the note and mortgage.  This indebtedness was to exist
for five years from the date of the note.  At the time it was
made, no one could say with any degree of certainty how
much taxes would be assessed upon the credit represented
thereby.  Such uncertainty destroys the negotiability of
the instrument.  *Walker v. Thompson,* 66 N. W. Rep.
[Mich.], 584; *Brooke v. Struthers,** 68 N. W. Rep. [Mich.],
272, 275; *Lockrow v. Cline,* 46 Pac. Rep. [Kan. App.], 720.
If, in addition to the provisions for the security of the debt,
the mortgage contains provisions relating strictly to the
indebtedness itself, making the amount that the holder
may demand thereon depend upon conditions that can not
be controlled by the holder, such uncertainty destroys the
negotiability of the note in the hands of one who has notice
of these conditions in the mortgage.

But the provision does not relate to the indebtedness.
It is the agreement of the makers of the mortgage, and
not of the maker of the note alone; and it is to pay "all
taxes and assessments levied upon the holder of the mort-
gage for and on account of the same," and not upon the
credit represented by the note.  The evidence shows that
the mortgagee was a Massachusetts corporation, and was

*35 L. R. A., 536.

engaged in the business of negotiating loans in the various states, taking notes and securities therefor to be sold in foreign countries; and the provision was plainly intended to meet the conditions which obtain in some jurisdictions, where the taxes chargeable against lands are assessed against both mortgagor and mortgagee in proportion to their several estates in the land. The effect of the provision would then be to maintain the securities intact, and would not affect the indebtedness itself. Agreements to protect the security from taxes or other depreciation do not render the amount of the indebtedness itself uncertain.

This, then, was a negotiable note, and payment to one who did not and could not produce the note, without proof that the party to whom payment was made was the owner of the paper, or the agent of the owner authorized to receive the money for him, is no defense against the note in the hands of an innocent purchaser.

The decree of the district court is reversed and the cause remanded, with directions to enter a decree of foreclosure as prayed.

REVERSED AND REMANDED.

On April 22, 1903, the following opinion on rehearing was filed:

1. **Mortgage:** CONDITION: NOTE: NEGOTIABILITY. The condition in a real estate mortgage securing a note otherwise negotiable that "the said parties of the first part hereby agree to pay all the taxes and assessments levied upon said premises and all taxes and assessments levied upon the holder of the mortgage for and on account of the same," destroys the negotiability of the note.

2. **Note:** PURCHASE: MORTGAGE: ASSIGNMENT: NOTICE OF CONTENTS OF MORTGAGE. One who purchases a note and takes the mortgage and assignment thereof with the note is chargeable with notice of the contents of the mortgage.

3. ———: MORTGAGE: NON-NEGOTIABLE: NOTICE: TRANSFER: SATISFACTION: PAYMENT. The maker of a note and mortgage not negotiable, who has no notice of a transfer of the papers, may satisfy the same by payment to the payee named therein.

SEDGWICK, J.

In the former opinion in this case (*ante,* page 280) it was held that the provisions there quoted from the note and mortgage did not destroy the negotiability of the note. A rehearing was allowed mainly for the consideration of that question. The oral arguments on this hearing were largely devoted to two propositions:

1. Should the conditions of the mortgage as distinguished from those in the note itself be held to affect the negotiability of the note? Upon this question we are entirely satisfied with the views expressed in the former opinion. If the terms and conditions of the mortgage are limited to the proper province of the mortgage—that is, to provide security for the indebtedness—its provisions relating solely to the security will not affect the negotiability of the note. If the holder of the note is compelled to pay the taxes or insurance on the mortgaged property to protect the security, and is afterwards allowed to recover the amount so paid in addition to the principal indebtedness, this does not affect the amount of the indebtedness itself. The mortgagee has no interest in the mortgaged property except a collateral and contingent one. The liability for these expenses is upon the mortgagor. If he shirks this responsibility and compels the mortgagee to assume it, equity allows the mortgagee to add the payment so made to his mortgage. This right has long been established as an essential element of the mortgage itself. It can not be held to destroy the negotiability of the note, unless the fact that the execution of the note is accompanied by the execution of a mortgage securing it is to have that effect. This principle applies to all agreements of the mortgagor to preserve the collateral security. It does not affect the rule that the two instruments when executed at the same time must be construed together. The provisions contained in the mortgage to protect the securities, which would be implied and enforced upon settled principles of equity whether expressed in the mortgage or not, can not

be held to render the note non-negotiable. As shown in the former opinion, provisions as to the indebtedness itself should properly be, and generally are, expressed in the note. If agreements in regard to the indebtedness are inserted in the accompanying paper executed at the same time with the note, and as a part of the same transaction, they must be construed with the note. If such agreements render the amount that the holder of the note can demand on the indebtedness itself uncertain, the note is non-negotiable in the hands of one who takes it with notice. The reasonableness of this rule would probably not be doubted in case the accompanying paper was not a mortgage, but was executed for the sole purpose of modifying the terms of the note, or to make its payment depend upon conditions expressed in the accompanying paper. The reason seems to be equally apparent when modifications of the terms of the note or limitations imposed upon the collection of the indebtedness itself are inserted in the accompanying mortgage. Such provisions in the mortgage are to be construed with the note. If the contract, so construed, renders the amount that may be demanded upon the indebtedness itself uncertain, one who takes the note, with notice of the limitations in the mortgage, is not entitled to protection as an innocent holder.

It is said by the plaintiff that there are two causes of action—"one at law upon the bond, seeking personal liability regardless of the lien; the other a proceeding to enforce the security regardless of the personal liability." This is true, but in an action at law upon the note, and without seeking to enforce the security, the plaintiff no doubt might allege that in a writing executed with the note, and as a part of the same transaction, it was agreed that the maker of the note should pay taxes that might be assessed against the holder of the note by reason thereof, and that such taxes were assessed and had been paid by the note-holder; and there is no doubt that such taxes so paid might, in such an action, be included in the recovery. If such recovery could be had when the agreements to pay

Garnett v. Meyers.

such taxes were in an accompanying paper executed for that purpose alone, no reason is perceived why recovery might not also be had in the same manner if such agreements were contained in a mortgage executed at the same time with the note and as a part of the same transaction.

2. Do the provisions of this mortgage relating to the indebtedness itself render the amount that may be demanded thereon by the holder uncertain? Upon this hearing we have been assisted by a strong brief and able argument upon this question. We quote from the brief:

"It is said in the body of the opinion that the provision was 'plainly intended to meet the conditions which obtain in some jurisdictions, where the taxes chargeable against lands are assessed against both mortgagor and mortgagee in proportion to their several estates in the land.' By what process of reasoning is this made so plainly to appear? The mortgagors had already positively agreed in the following language: 'The said parties of the first part hereby agree to pay all taxes and assessments levied upon said premises'—meaning the real estate covered by the mortgage. This provision seems to be as broad as language can make it, and certainly would be construed to cover any part of the taxes against the real estate that the mortgagee might become liable for. All can not be construed to mean less than the whole. It would seem, then, to be the duty of the court to give some meaning and force to the further agreement to pay all taxes and assessments levied upon the holder of the mortgage for and on account of the same. It seems perfectly plain to the writer that the latter provision was intended to cover the tax for which the holder of the mortgage would thereafter become liable on account of the ownership of the credit represented by the mortgage and note."

This reasoning seems to us to be sound. To construe the provisions in question to mean that the mortgagor should pay all taxes levied on the premises including taxes charged against the holder of the mortgage on account of the mortgaged property, is not so obvious and natural as

to treat the word "same" as relating to the word "mort-gage," as its nearer position in the sentence would indicate, rather than to the more remote "premises." If the former meaning were intended, the expression "including all taxes levied," etc., would have been more apt than the expression used. Giving the ordinary and natural meaning to all the words used in the provisions, it seems to us, upon further consideration, that the intention was that the mortgagor should not only pay the taxes assessed against the mort-gaged property, but also the taxes that the mortgagee might become liable for as the owner of the credit repre-sented by the paper. Such credits are taxable under the laws of this state, and therefore presumably so in other jurisdictions. When levied they are not a lien upon the mortgaged property, but are collectible from the holder of the credit as any other personal taxes. The amount, then, that may be demanded upon the note would depend upon uncertain conditions "that can not be controlled by the holder of the paper," and as pointed out in the former opinion, would destroy the negotiability of the paper. The note not being negotiable, the plaintiff, who purchased and took the mortgage with the note, must be held to have had notice of its conditions, and is not an innocent purchaser. Under such circumstances, payment to the original payee by the mortgagor, who had no notice of the transfer of the papers, would satisfy the mortgage.

The former judgment of this court is vacated and the judgment of the district court

AFFIRMED.