Argued April 10, decided April 29, rehearing denied July 1, 1913.

# PAGE *v.* FORD.*

(131 Pac. 1013.)

**Mortgages—Note Secured by Mortgage—Action for Personal Judgment.**

1. Section 426, L. O. L., which was part of Laws of 1903, page 252, entitled "An act to abolish deficiency judgments upon foreclosure of purchase money mortgages," and providing that, when judgment or decree is given for the foreclosure of any purchase money mortgage, the mortgagee shall not be entitled to a deficiency judgment, does not prevent the holder of a note given for the purchase price of land, which was secured by a mortgage, from disregarding the mortgage and bringing an action for personal judgment on the note, since the act abolishing deficiency judgments did not repeal Section 429, L. O. L., providing that during the pendency of an action for the recovery of a debt secured by a lien a suit cannot be maintained for the foreclosure of such lien nor thereafter, unless plaintiff recover judgment and execution be returned unsatisfied.

**Bills and Notes—Negotiability—Indorsement.**

2. Under Section 5841, L. O. L., which is part of the negotiable instruments law, providing that an instrument is payable to order where it is drawn payable to the order of a specified person, and that it may be drawn payable to the order of a payee who is not a maker, drawer, or drawee, or the drawer or maker, or the drawee, or two or more payees jointly, or one or some of several payees, or the temporary holder of an office, the indorsement of a negotiable instrument in the alternative does not render it non-negotiable.

**Bills and Notes—Negotiability—Sum Fixed.**

3. In view of Sections 6033, 6034, L. O. L., providing that when the rate of interest on any obligation is 8 per cent or under, contracts requiring the debtor to pay the taxes thereon shall be legal and enforceable, a promissory note secured by a mortgage to which it refers is not rendered non-negotiable because of a provision incorporated in the mortgage that the mortgagor shall pay the interest assessed against the note and mortgage, it being apparent that this provision did not change or render indefinite the amount of the note.

[As to agreements and conditions affecting the negotiability of bills and notes, see note in 125 Am. St. Rep. 192.

[As to the negotiability of a note containing a stipulation for attorney's fees, see note in Ann. Cas. 1912D, 165.]

[As to what is a negotiable note, see note in Ann. Cas. 1912D, 4.]

---

*Negotiability of note secured by mortgage as affected by provisions in mortgage, see notes in 35 L. R. A. 536 and 26 L. R. A. (N. S.) 217.                                              —REPORTER.

**Bills and Notes—Indorsement—Sufficiency.**

4.   Where a note was indorsed to two in the alternative, an indorsement by either is sufficient to transfer title.

**Corporations—Notes—Indorsement by Officer—Presumptions.**

5.   Where a note is made payable to a corporation and is indorsed by a person signing as an officer thereof, the indorsement will be presumed to be a corporate act.

**Bills and Notes—Indorsement—Negotiability.**

6.   Under the direct provisions of Section 5871, L. O. L., the indorsement of a note without recourse does not render it non-negotiable.

**Sales—Contract—Breach.**

7.   Where the seller of land agreed to deliver the purchaser a fixed number of feet of saw-logs within a stipulated period, the fact that he did not own the logs at the time of the sale does not constitute a breach.

**Bills and Notes—Bona Fide Holders—Defenses.**

8.   A *bona fide* holder takes a negotiable instrument free from all latent equities between the parties, and therefore evidence of a defense showing a breach of a contract entered into between the maker and the payee in consideration of which the note was given is not admissible.

**Corporations—Officers—Powers.**

9.   Where the by-laws of a corporation provided that all notes or other obligations should be signed by the president, vice-president, or secretary, each of which officers were authorized to affix the corporate seal, and that the president, vice-president, treasurer, or secretary should have authority to sign all drafts, checks, or orders, the president has authority to indorse a promissory note payable to the corporation.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. CHIEF JUSTICE MCBRIDE.

This is an action brought by the appellant, C. H. Page, to recover the amount due on a promissory note executed by respondents, F. F. Williams, Floy W. Williams, A. H. Ford and M. E. Ford, to the Oregon-Idaho Company, a corporation, and by it transferred to appellant.   The note was executed August 15, 1910, by respondents, and by the terms thereof they promised to pay to the order of the Oregon-Idaho Company the sum of $15,000 on or before six months there-

after, with interest at the rate of 6 per cent per annum
and a reasonable sum as attorney's fee in case of suit
or action.   The note was given as part of the purchase
price of certain real estate and personal property.   On
the margin of the note these words were written:
"This note is secured by mortgage of even date given
to secure the balance of the purchase price of the
property described in said mortgage."   The real es-
tate consisted of land on which was a sawmill.   The
personal property consisted of certain tools, machin-
ery and lumber.

The defendants answered: (1) That the note was
given as a part of the purchase price of certain real
estate sold by the said Oregon-Idaho Company to de-
fendants A. H. Ford and F. F. Williams, and that at
the same time and as a part of such consideration said
Oregon-Idaho Company entered into a contract with
such defendants to furnish and deliver to them
200,000,000 feet of logs, not less than 10,000,000 feet
the first year, and from 15,000,000 to 25,000,000 feet
each succeeding year, until the 200,000,000 feet should
be delivered.   That the note had not been transferred
to appellant by said corporation or by its authority,
and said contract had been breached by said Oregon-
Idaho Company and defendants damaged thereby in a
sum exceeding the amount of the note; hence the action
should abate.   (2) That, the note being for the bal-
ance of the purchase price of real estate and secured
by a mortgage thereon, no personal judgment could be
recovered.   A copy of the mortgage was set forth, and
it appears therefrom that the note was given as a part
of the purchase price of certain real estate and per-
sonal property covered by the mortgage.   A demurrer
to this defense was sustained by the court.   (3) It was
averred as a defense to the action that the Oregon-
Idaho Company had since the execution of such note,

mortgage and contract, been adjudged a bankrupt, and that the note had not been transferred to appellant by authority of such corporation; hence the trustee in bankruptcy was the real party in interest. (4) That plaintiff purchased the note with knowledge of the fact that said contract to supply defendants with logs was a part of the consideration therefor and that such contract had been breached, and alleged damages in excess of the amount due on the note.

To the first, third and fourth defenses appellant replied, denying the same and alleged that prior to any breach of the contract for logs, if any occurred, defendants sold and assigned such contract to the Cow Creek Mill Company, a corporation.

At the trial the court overruled respondents' contention that the holder of a note given for the balance of the purchase price of real estate and secured by a mortgage thereon is confined to the remedy of foreclosing the mortgage, and held that such holder may ignore the mortgage and recover a personal judgment in an action on the note. The note as stated was executed by the respondents to the Oregon-Idaho Company, and was by such company indorsed: "Pay to order of Frank Smith. Oregon-Idaho Co., by L. R. Ferbache, President." Smith indorsed it back in the form following: "Without recourse pay to the order of the Oregon-Idaho Co. or L. R. Ferbache. Frank E. Smith." It was then indorsed to appellant thus: "Pay to Chas. H. Page, or order, this 9th day of September, 1910. L. R. Ferbache, President Oregon-Idaho Co.," and "For value received, I hereby guarantee the payment of the within note absolutely without condition and waive demand, notice, or protest for nonpayment. L. R. Ferbache." The court ruled that the indorsement by Smith "to the order of Oregon-Idaho Co. or L. R. Ferbache" was an alternative indorse-

ment and destroyed the negotiability of the note. It was also contended by respondents that at the time the Oregon-Idaho Company entered into the contract to furnish said respondents 200,000,000 feet of logs it did not own land upon which there was any such quantity of timber, and that that fact operated as a breach of the contract at the moment it was made; and the court so held, or at least admitted testimony tending to show, that said company then had not over 40,000,000 feet of timber, and the court refused to instruct the jury that the mere fact, if they so found it, that said company did not own land on which there was 200,000,000 feet of timber at the date the contract was executed would not constitute a breach of the contract.          REVERSED: REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Charles W. Fulton* and *Messrs. King & Saxton,* with an oral argument by *Mr. Fulton.*

For respondents, F. F. Williams and Floy W. Williams, there was a brief over the names of *Messrs. Platt & Platt* and *Mr. J. O. Bailey,* with an oral argument by *Mr. Robert T. Platt.*

For respondents, A. H. Ford and M. E. Ford, there was no appearance except a brief over the names of *Messrs. Manning & White.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

There are four questions arising on this appeal, namely: (1) Is one who holds a note given for a balance due on the purchase price of real and personal property secured by a mortgage on such property restricted to the remedy of foreclosing the mortgage and a sale of such mortgaged property? (2) Did the aforesaid alternative indorsement render the note non-

negotiable? (3) Did the provision in the mortgage
that the mortgagors should pay taxes assessed against
the note or mortgage render the note non-negotiable?
(4) Did the fact that at the time the Oregon-Idaho
Company undertook to supply respondents with
200,000,000 feet of logs within a period of years it did
not own land containing that quantity of timber, consti-
tute a breach of such contract?

1. A correct solution of the first proposition turns
upon the construction to be placed upon Section 426,
L. O. L., which is as follows: "When judgment or de-
cree is given for the foreclosure of any mortgage, here-
after executed, to secure payment of the balance of
the purchase price of real property, such judgment or
decree shall provide for the sale of the real property,
covered by such mortgage, for the satisfaction of the
judgment or decree given therein, and the mortgagee
shall not be entitled to a deficiency judgment on ac-
count of such mortgage or note or obligation secured
by the same." That a creditor holding a note secured
by mortgage may ignore his security and bring an ac-
tion upon the note is settled beyond the pale of dis-
cussion: Jones, Mortgages (4 ed.), §§ 1215, 1218, 1220.
The section quoted by its terms is applicable only to
suits for the foreclosure of mortgages. The plaintiff
having brought his action at law upon the note is not
precluded by this section from obtaining the usual
judgment rendered in such cases. This view is
strengthened by an examination of the title of the act
abolishing deficiency judgments, which is as follows:
"An act to abolish deficiency judgments upon the fore-
closure of mortgages to secure the unpaid balance of
purchase price of real property": Session Laws 1903,
p. 252. By its title as well as by its text the effect of
the act is confined to foreclosure suits. It will be
noted that the act abolishing deficiency judgments

upon foreclosure makes no mention of, nor does it purport to repeal, Section 429, L. O. L., which is as follows: "During the pendency of an action at law for the recovery of a debt secured by any lien mentioned in Section 422, a suit cannot be maintained for the foreclosure of such lien, nor thereafter, unless judgment be given in such action that plaintiff recover such debt or some part thereof, and an execution thereon against the property of the defendant in the judgment is returned unsatisfied in whole or in part."

2. Did the alternative indorsement render the note non-negotiable? This is a question of much nicety, involving the construction of Section 5841, L. O. L., being identical with Section 27, uniform negotiable instruments law as it appears in Crawford, Negotiable Instruments, which first-mentioned section reads as follows: "The instrument is payable to order where it is drawn payable to the order of a specified person, or to him or his order. It may be drawn payable to the order of (1) a payee who is not maker, drawer, or drawee; or (2) the drawer or maker; or (3) the drawee; or (4) two or more payees jointly; or (5) one or some of several payees; or (6) the holder of an office for the time being. Where the instrument is payable to order, the payee must be named or otherwise indicated therein with reasonable certainty." At common law a note so indorsed was non-negotiable: 1 Daniel, Negotiable Instruments (4 ed.), § 103; Randolph, Commercial Paper, § 155; 1 Parsons, Notes and Bills, p. 34, note; Story, Promissory Notes, § 33. But this rule which was accompanied with many inconveniences, and was supported more by archaic precedent than sound logic, seems to have been abrogated by the uniform negotiable instruments act, now adopted by 34 states of the Union: Crawford, Negotiable Instruments (3 ed.), p. 20; Selover, Negotiable Instruments

(2 ed.), p. 75; *Union Bank* v. *Spies,* 151 Iowa, 178 (130 N. W. 928). The opinion of Mr. Crawford, who prepared the negotiable instruments act, is entitled to great consideration. The act is remedial in its nature, and should be liberally construed. We conclude, therefore, that in so far as it is affected by the alternative indorsement the note was negotiable.

3. The third proposition raises the question as to whether the provision in the mortgage requiring the mortgagor to pay all taxes that might thereafter be assessed on the note renders the amount due thereon uncertain, and therefore non-negotiable. It is contended by respondent with much plausibility that the note and mortgage, having been given at one time, and as part of the same transaction, should be construed together as one instrument. The logical effect of this argument would be to incorporate into the note in the case at bar, and into every other note executed simultaneously with a mortgage every stipulation in the mortgage. While this result does not seem to have been fully apprehended by courts holding the views hereinafter considered, it cannot be denied that the position of counsel for respondents has respectable authority to support it. The first citation is 7 Cyc. 596, wherein it is stated: "An agreement to pay taxes that may be levied on a note renders it uncertain as to the amount to be paid and non-negotiable." The first citation in the notes to Cyc. under the text quoted is *Walker* v. *Thompson,* 108 Mich. 686 (66 N. W. 584), which supports the text, and which is evidently dealing with the contents of the note, and not with its collateral security. The note there considered provided on its face that the mortgagor should pay all taxes assessed against the real estate described in the mortgage given to secure the note, the infirmity appearing on the face of the note itself. The next

case cited under the text is *New Windsor First Nat. Bank* v. *Bynum,* 84 N. C. 24 (37 Am. Rep. 604), which was an action on an unsecured promissory note, payable on a certain day for a certain amount, with exchange on New York and counsel fees for collecting the note if sued upon; the consideration being the purchase of an engine separator which it was stipulated in the note was to remain the property of the payee with power to take possession, and to declare the note due at any time the payee should deem it insecure. These conditions appearing on the face of the note the court seems to have held that the provision as to attorneys' fees and the option to declare the note due at any time rendered the note uncertain, first, as to the amount, and, second, as to the term of payment. As to the first reason assigned, this court, in *Peyser* v. *Cole,* 11 Or. 39 (4 Pac. 520, 50 Am. Rep. 451), and also in *Benn* v. *Kutzschan,* 24 Or. 28 (32 Pac. 763), has held to the contrary; as to the second, the alleged infirmity was patent on the face of the note: *Farquhar* v. *Fidelity Ins. Co.,* Fed. Cas. No. 4676, and *Howell* v. *Todd,* Fed. Cas. No. 6783, are both cases in which the agreement to pay taxes on the notes was incorporated in the note itself. We refer to these cases, not for the purpose of showing that they do not support the text, which they undoubtedly do, but for the purpose of demonstrating that the citation quoted does not refer to provisions contained in a mortgage collateral to a note, but to stipulations contained in the note itself. This is made evident by the concluding sentence in note 75, page 596, 7 Cyc., which cites the above authorities, in which it is stated: "Such provisions in a collateral mortgage will not render the note secured by it non-negotiable"—citing a number of authorities. Another authority cited by counsel is *Brooke* v. *Struthers,* 110 Mich. 562 (68 N. W. 272, 35 L. R. A.

536). This case appears to sustain counsel's contention, but its force is greatly weakened by the comments of the learned assistant editor of L. R. A., Mr. Farnham, author of Farnham, Waters, from whose notes on this case we quote the following excerpts: "The conflicting opinions of the judges in *Brooke* v. *Struthers* and *Wilson* v. *Campbell* [110 Mich. 580, 68 N. W. 278, 35 L. R. A. 544] upon this question disclose a singular situation. This situation has been approached gradually, apparently with no thought as to the logical conclusions of the rulings made from time to time." ·And, further speaking of this and other decisions tending in the same direction, he observes: "The tendency of these decisions was pointed out by HOUGH, J., in a dissenting opinion in *Noell* v. *Gaines,* 68 Mo. 649, in which he states that, with the exception of *Brownlee* v. *Arnold* [60 Mo. 79], 'I have been unable to find a single case in the books which holds that the owner of a note secured by mortgage is bound by the terms of the mortgage if he knows of its existence, although he may not wish to resort to or rely upon the mortgage security.' Continuing, he said that the rule that two instruments executed at the same time are to be read together was never intended to be so applied as to make a negotiable promissory note and a mortgage contemporaneously or subsequently executed to secure its payment as much one instrument as if they were one in form. The rule relates to an entirely different class of cases. A note and mortgage do not constitute a single contract. They are separate instruments executed for different purposes and differ in nature. The mortgage is governed by the law of real property, and the note by the law-merchant. If the holder of a negotiable note secured by a mortgage chooses to disregard or abandon the mortgage security, undoubtedly he may do so,

and the note will then be enforced according to its terms and the law of negotiable paper. If the note and mortgage are but one instrument, the note will lose its character as a promissory note, and become an ordinary contract merely. This difficulty seems to have presented itself very strongly to the Michigan court in the cases of *Brooke* v. *Struthers* and *Wilson* v. *Campbell,* and the court seems to be unable to dispose of the question, while no other case has been found which passes upon the exact point upon which this court split. The difficulty appears to be in the attempt to apply the rule governing the construction of different instruments executed at the same time. If that rule is to be applied to such a transaction, the logical conclusion would seem to be that the result of the transaction is simply a contract which cannot be regarded as negotiable. The other alternative is that which appears to have been originally adopted, that the mortgage is simply an incident to the note, and is to be regarded as the pledge of any other collateral security would be regarded, so that the note will be enforced by the holder according to its terms and the law-merchant, and for his additional security he will have the right to rely on the collateral mortgage which was executed to accompany the paper." *Garnett* v. *Myers,* 65 Neb. 280 (91 N. W. 400, 94 N. W. 803), is an opinion supporting defendant's contention. The matter arose upon an action to foreclose a mortgage upon real estate, which mortgage was given to secure a promissory note negotiable by its terms, upon the face of which was written a memorandum similar to that appearing upon the note in the case at bar. The mortgage contained a stipulation as follows: "The said parties of the first part hereby agree to pay all the taxes and assessments levied upon the said premises and all taxes and assessments levied upon the

holder of this mortgage for and on account of the same * * when the same are, respectively, due.'' It was also stipulated that in case of nonpayment of such taxes the holder of the mortgage might declare the debt due and foreclose the mortgage. Upon the first hearing of the case (91 N. W. 400) the court held that the stipulation to pay the taxes on the mortgage did not affect the negotiability of the note; but upon a rehearing it was held that the note and mortgage, having been executed at the same time, must be construed together, that the provision for the payment of future taxes rendered the amount of the debt uncertain, and that for that reason the note was non-negotiable. The court does not, in our opinion, draw clearly the distinction between the debt created by the mortgage and the debt evidenced by the note. The note as a note was for a sum certain. The mortgage was a contract to secure that note, and also a contract to secure the mortgagee against the payment of possible future taxes. Here were practically three contracts: One creating a personal liability for the sum mentioned in the note and governed by the law-merchant; another to secure payment of the note and interest; and a new contract to pay the taxes on the mortgage. This was called to the attention of the court, who answered by saying: ''It is said by the plaintiff that there are two causes of action 'one at law upon the bond, seeking personal liability regardless of the lien; and the other seeking to enforce the security regardless of the personal liability.' This is true, but in an action at law upon the note, and without seeking to enforce the security, the plaintiff no doubt might allege that in a writing executed with the note, and as a part of the same transaction, it was agreed that the maker of the note should pay taxes that might be assessed against the holder of the note by reason thereof, and that such taxes

were assessed, and had been paid by the noteholder; and there is no doubt that such taxes so paid might in such an action be included in the recovery. If such recovery could be had when the agreements to pay such taxes were in an accompanying paper executed for that purpose alone, no reason is perceived why recovery might not also be had in the same manner if such agreements were contained in a mortgage executed at the same time with the note, and as a part of the same transaction.'' The statement is faulty as applied to the case then being considered in this, that the mortgage did not provide that ''the maker of the note should pay taxes that might be assessed against the holder of the note by reason thereof,'' but simply provided that he should pay ''all taxes and assessments levied upon the said premises and all taxes and assessments levied upon the holder of this mortgage for and on account of the same.''

But, waiving this, we may observe that in Nebraska the distinction between legal and equitable procedure is abolished, and legal and equitable remedies may be pursued in the same form of action. However, in this state, where the distinctions are preserved, we opine that a plaintiff who should come into court seeking to enforce the payment of a promissory note and the covenants in a real estate mortgage in an action at law would find himself out of court on one count or the other. The conclusions drawn in the cases noted seem to us to be supported neither by sound logic nor public policy. Their logical result is to make every promissory note secured by a real estate mortgage a part of the mortgage, and subject to all its stipulations and conditions, thereby reducing it to a mere contract not negotiable. They assume that when parties sit down and execute a promissory note negotiable by its terms, and secure it by a mortgage, they intended as a matter

of law to do the thing that as a matter of fact they never thought of doing, namely, to make a non-negotiable note. As a matter of public policy, such holdings tend to discredit and cheapen commercial paper, and to render purchasers thereof suspicious of investing in it when secured by mortgages often held and recorded at a distance from the place where such paper is offered for sale. In this state, generally, we have been accustomed to regard the words, ''this note is secured by mortgage,'' written upon commercial paper, as in some sense a guaranty of value; but the Michigan and Nebraska decisions make the words a pitfall and possible badge of non-negotiability. Other cases cited by respondents are *Allen* v. *Dunn,* 71 Neb. 831 (99 N. W. 680), and *Consterdine* v. *Moore,* 65 Neb. 291 (91 N. W. 399, 96 N. W. 1021, 101 Am. St. Rep. 620), which follow *Garnett* v. *Myers,* 65 Neb. 280 (91 N. W. 400, 94 N. W. 803) ; also, *Iowa National Bank* v. *Carter,* 144 Iowa, 715 (123 N. W. 237) ; *Hull* v. *Angus,* 60 Or. 95 (118 Pac. 284). The Iowa case would seem to hold in accord with Michigan and the later decision from Nebraska. *Hull* v. *Angus,* 60 Or. 95 (118 Pac. 284), is not in point, for the reason that the note in suit in that case expressly and by its own terms was made part of the mortgage. It contained this provision: ''This note is given as a part of the purchase price of real property and is secured by mortgage of even date herewith, and subject to all the terms and conditions of said mortgage.'' By the very terms of the note, every condition of the mortgage was imported into it. By the peculiar terms of the contract, as set out in the opinion in that case and not necessary here to restate, there was abundant reason why the note should be made non-negotiable, and the parties deliberately made it so. We think that the case of *Frost* v. *Fisher,* 13 Colo. App. 322 (58 Pac.

872), lays down the true rule in regard to the effect of stipulations in a mortgage upon the negotiability of a promissory note which the mortgage secures. This was a case where a note negotiable in form was secured by a trust deed, which stipulated, among other things, that the mortgagor (such was his legal relation to the payee) should pay all taxes and assessments on the premises and at the request of the mortgagee keep all buildings insured, etc., and in case of refusal so to do the mortgagee might pay such taxes and insure the property, and the sums so paid with interest should become so much additional indebtedness secured by the deed of trust, to be paid out of the proceeds of sale of the lands described therein. It will be seen that there is no logical distinction between the Colorado case and the case of *Brooke* v. *Struthers,* 110 Mich. 562 (68 N. W. 272, 35 L. R. A. 536). In neither case were the amounts added to the indebtedness stipulated to become a part of the note; and, as conceded in *Brooke* v. *Struthers,* they did not become part of the note except by construing the note and mortgage as one instrument. The circumstance adverted to in some of the cases cited that in some instances the stipulation was to pay taxes and insurance on the mortgaged property to protect the security, and that a stipulation to pay taxes on the note itself not being for the protection of the property differentiated the two in some way, so that an uncertainty in the amount of the debt, if it arose, from the necessity of protecting the property did not render the amount due on the note uncertain, while an uncertainty in the amount of the debt arising from a stipulation to pay taxes upon the note did render the amount uncertain, indicates a certain judicial muddlement of ideas in courts whose opinions are usually clear and convincing. The opinion of the Colorado court is so appropriate to the

contentions in the case at bar that we quote at length from it:

"Upon its face the note is negotiable. It was made for an amount certain, and was payable at a time certain. It might become payable before that time, but at that time it was in any event payable. It was therefore a negotiable promissory note. The expressed purpose of the trust deed was to secure the payment of this note, and the interest notes attached to it, in whosesoever hands they might be, and to indemnify the payee, its successors and assigns. Throughout the entire deed the note is mentioned as something distinct from it, and its covenants and provisions have reference solely to the payment of the note. The general doctrine is that the note is the principal thing and the mortgage an accessory, and that the transfer of the debt *ipso facto* carries with it the security. And where the debt is in the form of a negotiable promissory note, if it is transferred for value before maturity, the *bona fide* holder is entitled to the benefit of the security free from any equities arising between the original parties: 1 Daniel, Negotiable Instruments, § 834; 1 Jones, Mortgages, § 834; *Fasset* v. *Mulock*, 5 Colo. 466; *Carpenter* v. *Longan*, 16 Wall. 271 [21 L. Ed. 313]. Even if this doctrine is denied elsewhere, the cases of *Fasset* v. *Mulock* and *Carpenter* v. *Longan*, fix it in this state. Were it not for certain stipulations in the trust deed, in virtue of which additions might be made to the debt secured, the case would be beset by no difficulty. But it is argued that these stipulations became part of the note; that as a result the note was non-negotiable; that, therefore, the payments to the Globe Investment Company, without knowledge by the plaintiffs of the transfer, discharged the note, and some authorities are cited and relied upon to support the contention. The general rule, without doubt, is that where two separate contracts are executed at the same time, affecting the same subject matter, they are to be construed together

as one contract; and where the maker of a note, at the time of its execution, enters into a written agreement, by which he is personally bound, varying, or conditionally varying, the terms of the note, the stipulations of the writing enter into and become part of the note: *Munro* v. *King,* 3 Colo. 238. A mortgage may contain a personal covenant so expressed that the terms of the note would be modified and controlled by it. In such case, and upon the same principle, the covenant would be imported into the note; and in determining the obligation and liability of the maker should be construed with the note as part of it. But we do not think that the rule applies to a covenant which is inserted purely for the purposes of security, and for the enforcement of which resort can be had only to the property mortgaged. This deed of trust provided that the plaintiffs should pay all taxes and assessments on the premises conveyed, and keep the buildings thereon insured; that, if they refused or neglected so to do, the trustee, or the holder of the note, might pay the taxes and procure the insurance; and that in such event the moneys expended should become so much additional indebtedness secured by the trust deed; but the instrument also provided that, if the amount so paid should not be refunded by the grantors, the party paying it should be reimbursed out of the proceeds of the sale of the premises. There was no promise by the grantors to refund the money. It is true that it was agreed that the expense should become so much additional indebtedness; but it was also stipulated that, if the grantors did not choose to pay it, it should be paid by the land. It could not have been recovered in a suit upon the note. It was chargeable against the land, and the land alone. Furthermore, the deed provided that in any case of a sale the money realized should be applied, first, to the payment of the expenses of the sale, including an attorney's fee and trustee's commission, next to the payment of the money expended for taxes and insurance, and which would con-

stitute the 'additional indebtedness' mentioned, and lastly to the payment of the note and interest. The parties here made a clear distinction between the 'additional indebtedness' and the indebtedness evidenced by the note. It was made a preferred claim, and must be paid before anything could be applied on the note. It was to stand upon its own footing, and be separate from, independent of, and superior to, the note. Hence it could not have been, and was not intended to be, part of the note. It seems evident to us that these several stipulations were introduced into the trust deed for the sole purpose of more effectually securing the debt for which the note was given. They were intended to provide against the impairment of the security by an accumulation of unpaid taxes upon the land, and the destruction of uninsured buildings, which were part of the land, and to enable the holder to protect himself against the consequences of any failure of the grantors to preserve the security intact, by making immediate sale of the property; but the only end to be attained, the end, and no other, which every provision of the deed had in view, was the collection of the note. The deed of trust was therefore simply a security for the payment of the note, and the sole purpose of its several provisions was to render the security available and effective. When the plaintiff took the note, he took the right to resort to the security to make his debt, and for that purpose to avail himself of every provision it contained. Whatever would defeat his remedy upon one would defeat his remedy upon the other; and, if no defense could be interposed to an action upon the note, none could be interposed to a proceeding for the foreclosure of the trust deed. Nothing would be gained by a critical examination of all the authorities to which counsel for the plaintiffs have referred us, and we shall therefore notice only a few of the principal ones. In *Donaldson* v. *Grant,* 15 Utah, 231 [49 Pac. 779], the maker stipulated in his note that, upon his failure to comply with

any of the conditions or agreements contained in the mortgage given to secure it, the principal sum, with the accrued interest, should, at the option of the holder, become due and payable, and should be collectible without further notice. The mortgage contained covenants for the payment of taxes, assessments and insurance, and against waste. The court held that the stipulation in the note rendered the instrument non-negotiable. The conclusion was reached by construing the stipulation as binding the maker to perform the covenants contained in his mortgage, and therefore to pay, in addition to the principal sum and interest, uncertain and indefinite amounts for taxes, assessments, insurance premiums, and damages for waste. The note by its own terms made the covenants of the mortgage part of it; and, if the court's construction of the stipulation was correct, we do not see that its decision can be assailed. The note in the case at bar contains no such stipulation. It is a complete instrument within itself, and it requires no resort to any other instrument to explain it. The Utah decision is therefore inapplicable. In *Brooke* v. *Struthers,* 110 Mich. 562 (68 N. W. 272, 35 L. R. A. 536), it was held that a provision in a mortgage binding the mortgagor to pay all taxes and assessments upon the premises, and upon his failure for 30 days to pay any tax or assessment, valid or invalid, making the note due and payable immediately, injected a contract into the obligation; and because it rendered the note uncertain in time of payment, and ingrafted a contract upon it as part of it, the note was rendered non-negotiable. Mr. Justice MONTGOMERY concurred in the decision for the reason that at the time the note and mortgage were executed the law of 1891 was in force, and the mortgage required the payment by the mortgagor, not only of the taxes levied upon the land, which he was under a legal obligation to pay without contract, but also of the taxes levied upon the mortgage, which were by law chargeable against the mortgagee. We are not ad-

vised either by the principal or concurring opinion
what the law of 1891 was, and sufficient of the lan-
guage of the mortgage provisions is not given to en-
able us to understand the full purport of the decision.
But if the court intended to decide that a note, which
was by its express terms payable at a time certain,
but which, either by its own terms, or in virtue of the
provisions of a separate instrument, might, in a con-
tingency named, or upon some condition mentioned,
mature earlier, was not negotiable, then the decision
is not in accordance with our understanding of the law
as it is generally stated, and certainly not in harmony
with the doctrine announced by the Supreme Court of
this state: *Kiskadden* v. *Allen,* 7 Colo. 206 (3 Pac.
221). See, also, *Chicago Railway Equipment Co.* v.
*Merchants' National Bank,* 136 U. S. 268 (34 L. Ed.
349, 10 Sup. Ct. Rep. 999); *Dobbins* v. *Oberman,* 17
Neb. 163 (22 N. W. 356); *Ernst* v. *Steckman,* 74 Pa.
13 (15 Am. Rep. 542), and *Carlon* v. *Kenealy,* 12 Mees.
& W. 139. Neither does it seem to be the doctrine of
the Supreme Court of Michigan, for in the later case
of *Wilson* v. *Campbell,* 110 Mich. 580 (68 N. W. 278,
35 L. R. A. 544), it is held that a note which may, upon
condition, become due before the period fixed by itself
for its maturity, is not therefore non-negotiable. In
*Noell* v. *Gaines,* 68 Mo. 649, it was decided that where
two promissory notes, maturing at different dates,
were secured by a deed of trust which provided that
should the maker fail or refuse to pay the debt or
interest, or any part thereof when it became due or
payable, according to the tenor and effect of the notes,
then the whole should become due and payable, the
notes and deed constituted but one contract, and the
provisions of the deed controlled the language of the
notes; so that upon default by the maker in payment
of an installment of interest they both became abso-
lutely due, and demand by the holder upon the maker
of payment of the second note on the date when it
matured according to its terms, followed by notice

of dishonor to the payee and indorser, came too late. This decision met with a vigorous dissent from Mr. Justice Hough, and was in direct conflict with previous utterances of the same court: *Morgan* v. *Martien,* 32 Mo. 438; *Mason* v. *Barnard,* 36 Mo. 384; *Thompson* v. *Field,* 38 Mo. 320. We find nothing in the plaintiff's authorities which would tend to produce a change in the views we have expressed, even if they were directly in point. But for the most part they do not reach the questions which are debated here."

To the same effect is *Thorp* v. *Mindeman,* 123 Wis. 149 (101 N. W. 417, 68 L. R. A. 146, 107 Am. St. Rep. 1003), wherein the court says:

"If all the agreements contained in every mortgage are as matter of law imported into the note, * * the most simple real estate mortgage would deprive the note which it secures of its negotiable character, because it would import into the note one or more collateral agreements which are not for the payment of money. Fortunately it is not necessary to give so violent a shock to the well-understood principles of law governing the negotiability of notes and mortgages. The appellant's contention really results from a confusion of ideas. They lay down the well-understood proposition that contemporaneous instruments relating to the same subject matter are to be construed together, and conclude that it follows that a note and mortgage, though separately executed, are one instrument, and that the note is that instrument. The rule that instruments are to be construed together does not lead to this result. Construing together simply means that, if there be any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves and all persons charged with notice, so that the intent of the parties may be carried out, and that the whole agreement actually made may be effectuated. This does not mean that the provisions of one instrument are im-

ported bodily into another, contrary to the intent of the parties. They may be intended to be separate instruments, and to provide for entirely different things, as in the very case before us. The note is given as evidence of the debt and to fix the terms and time of payment. It is usually complete in itself—a single, absolute obligation. The purpose of the mortgage is simply to pledge certain property as security for the payment of the note. * * The promise to pay is one distinct agreement, and, if couched in proper terms, is negotiable. The pledge of real estate to secure that promise is another distinct agreement, which ordinarily is not intended to affect in the least the promise to pay, but only to give a remedy for failure to carry out the promise to pay. The holder of the note may discard the mortgage entirely, and sue and recover on his note; and the fact that a mortgage had been given with the note, containing all manner of agreements relating simply to the preservation of the security, would cut no figure. A pleading alleging such facts would be stricken out as frivolous or irrelevant.''

Other cases bearing upon this question are *Hunter* v. *Clarke*, 184 Ill. 158 (56 N. E. 297, 75 Am. St. Rep. 160); *Farmer* v. *First National Bank*, 89 Ark. 132 (115 S. W. 1114, 131 Am. St. Rep. 79). It may be also observed that Sections 6033, 6034, L. O. L., provide that, when the rate of interest on any obligation is 8 per cent or under, contracts requiring the debtor to pay the taxes on such indebtedness shall be legal and valid, and enforceable in the courts of this state. It is hardly conceivable, in view of these provisions expressly sanctioning such contracts, that it was in the legislative mind to render notes or mortgages containing such provisions non-negotiable, even where the contract appeared on the face of the note, which is not so in this case.

4, 5. In view of the fact that we here hold that an alternative indorsement is valid and that either indorsee may again transfer the note, the question as to whether the indosement "L. R. Ferbache, President of the Oregon-Idaho Company," is to be considered as his personal indorsement, or that of the corporation, is unimportant. Both the corporation and Ferbache received it with that indorsement. If the corporation was ever reinvested with title to the note after its indorsement to Smith, such title comes by virtue of the reindorsement, which was made in such a form as to authorize either Ferbache or the corporation to again indorse it to a third party. Had the indorsement been simply "L. R. Ferbache," it would have been sufficient to transfer the property in the note to plaintiff; but the presumption is that, where a note is made payable to a corporation and is indorsed by a person signing as an officer of the corporation, the indorsement is a corporate act: 1 Daniel, Negotiable Instruments, § 416, citing *Northampton Bank* v. *Pepoon,* 11 Mass. 288; *Lay* v. *Austin,* 25 Fla. 933 (7 South. 143); *Elwell* v. *Dodge,* 33 Barb. (N. Y.) 336; *Falk* v. *Moebs,* 127 U. S. 597 (32 L. Ed. 266, 8 Sup. Ct. Rep. 1319).

6. The indorsement of the note without recourse did not render it non-negotiable: L. O. L., § 5871.

7. There is no breach of the contract occasioned by the fact that when the Oregon-Idaho Company contracted to deliver to Ford and Williams 200,000,000 feet of logs, to be delivered at the rate of not less than 10,000,000 feet the first year and from 15,000,000 to 25,000,000 feet each succeeding year, they were not the owners of that amount of timber, there being no covenant at the time of the contract that they were such owners. If by purchase from others or by purchase of timber land from time to time they furnished the

amount required by their contract each year, the question as to when they obtained it would be immaterial.

8. In view of our holding that the note was negotiable and passed by indorsement free from latent equities between the parties, the testimony was immaterial in any event. In this view of the case the following instruction given by the court was error: "The note being non-negotiable, the defendants Ford and Williams are entitled to show any defense thereon which they had against the Oregon-Idaho Company at the time the notice of the assignment of the note was given to them."

9. Irrespective of any oral testimony or the manner in which the note was indorsed, the following sections of the by-laws of the Oregon-Idaho Company confer ample authority on the president of the corporation to indorse notes of the company. The sections referred to are as follows:

"Section 1. All notes, bonds, mortgages, or other obligations of this corporation shall be signed by the president, vice-president, or by the secretary, each of which officers is authorized to affix the corporate seal to any or all such or other instruments requiring the same.

"Sec. 2. The president, vice-president, treasurer, or the secretary shall have authority to sign all drafts, checks, or orders for the payment of money, and to disburse money or moneys on behalf of this corporation."

In view of the law as herein set forth, none of the testimony offered by defendants was relevant or material, and the court should have directed a verdict for plaintiff.

The judgment is reversed and a new trial granted.

REVERSED: REHEARING DENIED.