(No. 21620.—

THE STURGIS NATIONAL BANK, Plaintiff in Error, *vs.* THE HARRIS TRUST AND SAVINGS BANK, Defendant in Error.

*Opinion filed February 23, 1933.*

Thomas Hart Fisher, for plaintiff in error.

Chapman & Cutler, (Charles M. Thomson, of counsel,) for defendant in error.

Mr. Justice Dunn delivered the opinion of the court:

The Sturgis National Bank of Sturgis, Michigan, brought an action of trover in the circuit court of Cook county against the Harris Trust and Savings Bank for the conversion of five six per cent first mortgage gold bonds of the Central Mexico Light and Power Company. A plea of the general issue was filed. Upon a trial by the court without a jury the issues were found for the defendant. A judgment was rendered against the plaintiff in bar of the action and for costs. The plaintiff appealed to the Appellate Court, which affirmed the judgment, and a writ of error was awarded to the plaintiff for a review of the record.

The bonds belonged to the plaintiff, from whom they were stolen on December 17, 1928. The Hotchkin Company of Boston, Massachusetts, bought them on August 8, 1929, of the Atlantic Investing Corporation at 86¼ and accrued interest, without notice that they were stolen or knowledge of anything to lead to suspicion of any infirmity in the title of the seller. The Hotchkin Company sold the bonds on the same day to A. H. Fisher, receiving $4350, and $31.67 accrued interest, in payment. Fisher had no notice that the bonds were stolen. He instructed the

Hotchkin Company to deliver the bonds to Mrs. Margaret B. Fisher, in care of the Harris Trust and Savings Bank in Chicago, and about August 17, 1929, they were so delivered to the defendant as bailee for Mrs. Fisher. The Sturgis National Bank made a demand in writing on the Harris Trust and Savings Bank for the bonds, which was refused.

This case is governed by the same rules of law which controlled the decision of *Pflueger* v. *Broadway Trust and Savings Bank*, (*ante*, p. 170.) In that case three $1000 debenture bonds of the Container Corporation of America were stolen from the plaintiff, their owner, and several months later were delivered to the defendant by Henry Hoffmeyer, a customer of the bank, as collateral security for a loan of $2500 then made. The bank made the loan and accepted the collateral security in the due and ordinary course of business, in good faith and without notice of any infirmity in Hoffmeyer's title. The owner from whom the bonds had been stolen brought a suit in replevin against the bank. Upon a trial the defendant was found guilty and the right of possession was found to be in the plaintiff. On appeal the Appellate Court reversed the judgment and found the right of property and of possession to be in the defendant, and on a writ of *certiorari* that judgment was affirmed. The cases are identical in principle, the common controlling question being, Were the bonds negotiable? If they were, the judgment of the Appellate Court affirming the judgment of the circuit court was right; if they were not, the judgments were wrong and should be reversed. This is conceded by both parties. The purchase of a stolen negotiable instrument in due course from the thief confers a good title.

The bonds were executed by the Central Mexico Light and Power Company by its president, were attested by its secretary and were dated January 3, 1910. Coupons for the semi-annual interest were attached, also the certificate

of the City Trust Company, trustee, on each bond that it was one of the series of bonds described in the mortgage or deed of trust referred to in the bond. Each was in the following form, except for the number:

"UNITED STATES OF AMERICA
*State of Maine*

Central Mexico Light and Power Company First Mortgage Six per cent Thirty-Year Gold Bond.

"No. 562                                                                    $1000

"For value received, Central Mexico Light and Power Company promises to pay to bearer, or, in case this bond is registered, to the registered holder hereof, on January 1, 1940, one thousand dollars in gold coin of the United States of America, of the present standard, at the office or agency of the obligor company, in the city of Boston, Massachusetts, or two hundred and five pounds, nine shillings and ten pence  *  *  *  sterling money of Great Britain, at the office of William P. Bonbright and Company or other agency of the obligor company in the city of London, England, at the holder's option, and to pay interest thereon at the rate of six percentum per annum from January 1, 1910, on presentation and surrender at the office of City Trust Company in the city of Boston, or at the office of William P. Bonbright and Company or other agency of the obligor company in the city of New York, or at the office of William P. Bonbright and Company or other agency of the obligor company in the city of London, at the holder's option, of the annexed coupons as they become due, on the first days of July and January in each year, until such principal shall be paid, without deduction from principal or interest on account of any taxes, assessments or other governmental charges, which the obligor company may be required to pay or retain therefrom by virtue of any present or future law or requirement.

"This bond is one of a series of bonds for the aggregate principal sum of two million five hundred thousand dollars ($2,500,000) or five hundred and thirteen thousand seven hundred and sixteen pounds, four shillings and five pence  *  *  *  sterling, and is entitled to the benefits and subject to the provisions of a mortgage or deed of trust dated January 3, 1910, made by the obligor company to City Trust Company, as trustee. This bond is subject to redemption at 105 and accrued interest on January 1, 1915, and any interest date thereafter. The obligor company is required to create a sinking fund which is to be used in the purchase of bonds of said series at or below said redemption price, and the principal of said bonds may become due in case of default or sale under said

mortgage or deed of trust, all as provided in said mortgage or deed of trust, to which reference is made for a complete statement.

"This bond may be registered on the books of the obligor company kept at its said offices or agencies in the cities of New York, Boston or London, and the registration noted hereon, after which no valid transfer hereof can be made, except on said books, until after registered transfer to bearer, but registration shall not restrain negotiability of the coupons by delivery merely.

"No recourse shall be had for the payment of the principal or interest of this bond against any stockholder, officer or director of the obligor company, either directly or through the obligor company, by virtue of any statute or by enforcement of any assessment or otherwise, any and all such liability of stockholders, directors and officers being released by the holder hereof by the acceptance of this bond, and being likewise waived and released by the terms of the mortgage or deed of trust, subject to which this bond is issued.

"This bond shall not be valid until authenticated by the certificate of the trustee endorsed hereon."

By stipulation of the parties certain sections of the Negotiable Instrument law of Massachusetts and of the Negotiable Instrument law of New York were admitted in evidence. They do not differ in any material respect from the Negotiable Instrument law of Illinois. (Cahill's Stat. 1931, p. 1951; Smith's Stat. 1931, p. 1964.) The parts of the Negotiable Instrument law to be considered in this case as enacted in this State are:

"Sec. 1. An instrument payable in money to be negotiated must conform to the following requirements: 1. It must be in writing and signed by the maker or drawer. 2. Must contain an unconditional promise or order to pay a sum certain in money. 3. Must be payable on demand or at a fixed or determinable future time. 4. Must be payable to the order of a specified person or to bearer. * * *

"Sec. 2. The sum payable is a sum certain within the meaning of this act, although it is to be paid: 1. With interest; or 2. By stated installments; or 3. By stated installments, with a provision that upon default in payment of any installment, or of interest the whole shall become due. * * *

"Sec. 3. An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with: 1. An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or 2. A statement of the transaction which gives rise to the instrument. But an order or promise to pay out of a particular fund is not unconditional.

"Sec. 4. An instrument is payable at a determinable future time, within the meaning of this act, which is expressed to be payable: 1. At a fixed period after date or sight; or 2. On or before a fixed or determinable future time specified therein; or 3. On or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain. An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

The first paragraph of these bonds, standing alone, complies with every requirement of the Negotiable Instrument law, and if there is any failure in the whole instrument to comply with any requirement of the law it must be found in some modification of the first paragraph of the bond by its later language.

The plaintiff in error contends that the provision in the second paragraph of the bond is such a modification of its terms as makes it necessary for the holder of the bond to look to another instrument to learn what the obligations of the issuing company and his rights as holder of the bond are, and therefore the bonds are not unconditional and so are not negotiable. That paragraph recites that the particular bond is one of a series and is subject to the provisions of a mortgage or deed of trust dated January 3, 1910, made by the obligor company to City Trust Company, trustee. It also recites that the bond is subject to redemption at 105 and accrued interest on January 1, 1915, and any interest date thereafter; that the obligor is required to create a sinking fund, which is to be used for

the purchase of bonds of the series at or below the redemption price, and that the principal may become due in case of default or sale under the mortgage or deed of trust, all as provided in the mortgage or deed of trust, to which reference is made for a complete statement.

The negotiability of an instrument must be determined from the writing itself. It cannot depend upon extrinsic evidence. (*Equitable Trust Co.* v. *Harger*, 258 Ill. 615; *King Cattle Co.* v. *Joseph*, 158 Minn. 481; *Old Colony Trust Co.* v. *Stumpel*, 247 N. Y. 538; *Enoch* v. *Brandon*, 249 id. 263; *Paepcke* v. *Paine*, 253 Mich. 636.) The reference to another writing which will destroy the negotiability of an instrument, otherwise negotiable, must be of a kind which in some respect qualifies or makes uncertain or conditional the promise. (*Siegel, Cooper & Co.* v. *Chicago Trust and Savings Bank*, 131 Ill. 569; *Biegler* v. *Merchants' Loan and Trust Co.* 164 id. 197; *Zollman* v. *Jackson Savings Bank*, 238 id. 290; *Pflueger* v. *Broadway Trust and Savings Bank, supra.*) Reference in a bond, note or other obligation for the payment of money, otherwise negotiable, to the fact that it is secured by a mortgage or trust deed or by the deposit of collateral securities; (*Siegel, Cooper & Co.* v. *Chicago Trust and Savings Bank, supra; Biegler* v. *Merchants' Loan and Trust Co. supra; Zollman* v. *Jackson Savings Bank, supra; Hunter* v. *Clarke*, 184 Ill. 158;) or that the consideration for it is a promise to pay money for services to be rendered in the future; (*Siegel, Cooper & Co.* v. *Chicago Trust and Savings Bank, supra;*) or to advance money in the future; (*Zollman* v. *Jackson Savings Bank, supra*;) or is the purchase of personal property to be paid for by a series of notes maturing on certain fixed dates, all to become due on the failure of the maker to pay any one of the notes, the title of the property to remain in the payee, the vendor, until all the notes are paid, all of the notes being equally and ratably secured on the property; (*Chicago Railway Equipment Co.*

v. *Merchants Nat. Bank,* 136 U. S. 268;) or is a contract whose terms are not mentioned; (*Nat. Bank of Newbery* v. *Wentworth,* 218 Mass. 30; *Taylor* v. *Curry,* 109 Mass. 36;) or that it is issued as one of a series of like obligations, all of which are equally secured by a mortgage or trust deed or other collateral agreement, and that each is equally entitled to the privileges and subject to the provisions of the trust deed; (*Pflueger* v. *Broadway Trust and Savings Bank, supra; Page* v. *Ford,* 65 Ore. 450; *Thorpe* v. *Mindeman,* 123 Wis. 149; *Enoch* v. *Brandon, supra; Hibbs* v. *Brown,* 190 N. Y. 167;) does not affect the negotiability of the instrument containing the reference. In all such cases where the reference is general and no particular provision of the mortgage, trust deed or other agreement for collateral security is mentioned which modifies the unconditional promise to pay, the amount to be paid or the time when it is to be paid, the negotiability of the note is not affected. Such a reference does not make the instrument referred to, a part of the promise to pay or indicate an intention to impose any condition upon that promise. Each case must be determined on its particular facts, and the question in each case is, Does the language of the particular instrument modify the promise to pay by subjecting it to the possibility of a condition contained in the instrument referred to? The terms of the instrument referred to are immaterial. The question is whether the terms of the reference are such as to lead to the inference that the instrument referred to contains a condition qualifying the absolute promise to pay or the amount or time of such payment.

Many cases have been decided in the various State and Federal courts involving the question of the effect of a reference in an instrument, otherwise negotiable, to another contract generally, or to a mortgage securing the instrument, or to an agreement in regard to security. Since the language in which the reference is expressed and the con-

text in connection with which it is used frequently vary greatly, the construction of the instrument under consideration in each case depends upon its particular circumstances. The rules which have been stated in the cases cited in this opinion follow the general principle that where the meaning is doubtful that construction will be adopted which is most favorable to the negotiability of the instrument. (*Enoch* v. *Brandon, supra.*) The bonds in that case were part of an issue of $7,500,000, "all equally secured by and entitled to the benefits and subject to the provisions" of the trust mortgage. The recital in the bonds, after speaking of possible redemption, of acceleration of payment, of a sinking fund and of notice, continued: "All as provided" in the trust mortgage, "to which reference is hereby made for a description of the property mortgaged and pledged, the nature and extent of the security, the rights of the holders of the bonds with respect thereto, the manner in which notice may be given to such holders, and the terms and conditions under which said bonds are issued and secured." The opinion stated: "We hold that here there is no modification of the promise to pay, made in explicit terms. The provisions all have to do with the trust mortgage. They refer to the rights conferred by it upon the bondholders and limit and explain those rights. They are so linked together as to indicate that the obligor was speaking solely of the security. A purchaser scanning the bond would have the same thought. It would never occur to him that when November 1, 1941, arrived, because of something contained in the mortgage he might be unable to collect the amount due him. He would interpret the statement that the bonds were secured by, and entitled to the benefits and subject to the provisions of, the mortgage, as meaning that a foreclosure or other relief might be had thereunder only subject to its provisions. He would see that reference to it is also made to determine the terms and conditions under which the bonds are issued and secured.

Again, it would mean to him, as it means to us, that only by turning to the mortgage might he discover the precise nature of the lien he is to obtain. He would see that the bonds were to be issued not only upon the general credit of the corporation but upon the faith of some collateral mortgage. To it he must go if further knowledge as to this security is desired."

The case of *Paepcke* v. *Paine*, 253 Mich. 636, involved the question of negotiability of bonds of the same issue as the bonds involved in *Pflueger* v. *Broadway Trust and Savings Bank, supra.* The reference contained in each of those bonds recites that it was one of a duly authorized issue of $1,000,000 issued under a certain trust agreement, to which "reference is hereby made for a statement of the terms under which the said debentures are issued and the rights and obligations of the company, of the trustee and of the respective holders of the said debentures under the said trust agreement. To the extent provided in the said trust agreement all rights of action upon this debenture are vested in the trustee." It was held that the reference in the bond in no way affected the unconditional promise to pay. The purchaser was referred to the trust agreement for a statement of the rights and obligations of the company, trustee and holders of the bonds under that agreement. It did not refer to or qualify the unconditional promise of the company to pay the bond at maturity as clearly expressed, and it gave notice to purchasers that they might examine the trust agreement before purchasing the bond to ascertain the nature and kind of the security pledged to insure payment and the nature of the procedure provided to enforce the same. It in no way imposed that duty upon him in order to determine the status of the bond as a negotiable instrument.

In the case of *Page* v. *Ford, supra,* an action was brought on a promissory note given by the defendants to the Oregon-Idaho Company as a part of the purchase price

of certain real estate sold to that company, and as a part of the consideration the Oregon-Idaho Company contracted with the makers of the note to furnish and deliver to them certain quantities of logs deliverable during a series of years until the whole quantity was delivered. The note was secured by a mortgage on real and personal property, and on its margin was written, "This note is secured by mortgage of even date given to secure the balance of the purchase price of the property described in said mortgage." The defendants, as one defense, contended that the provision contained in the mortgage requiring the mortgagor to pay all taxes that might thereafter be assessed on the note rendered the amount due thereon uncertain and the note non-negotiable, and that the note and mortgage having been given at one time and as a part of the same transaction should be construed as one instrument. The court held that the insertion in the mortgage of a provision that the mortgagor shall pay all taxes assessed against the note or mortgage, the two instruments having been executed at the same time as a part of the same transaction, did not render the note non-negotiable for the creation of an uncertainty in the amount due where the note did not incorporate the provisions of the mortgage, since the instruments were not to be construed together as forming only one contract. The opinion of the court contains an extended discussion of the rule of construction that two contracts executed at the same time in regard to the same transaction should be construed together, and cites and analyzes a great many cases on this question.

With reference to decisions tending to the conclusion that the agreement in a mortgage to pay taxes on the note secured requires the note and mortgage to be construed as one instrument and therefore renders the note merely a contract to pay money, of which the mortgage is a part, the chief justice, who delivered the opinion of the court in *Page* v. *Ford, supra,* quoted and approved a note to the

case of *Brooke* v. *Struthers*, 110 Mich. 589, 35 L. R. A. 536, by Henry P. Farnham, the assistant editor of that series and the author of Farnham on Waters, as follows: "The tendency of these decisions was pointed out by Hough, J., in a dissenting opinion in *Noell* v. *Gaines*, 68 Mo. 649, in which he states that with the exception of *Brownlee* v. *Arnold*, 60 Mo. 79, 'I have been unable to find a single case in the books which holds that the owner of a note secured by mortgage is bound by the terms of the mortgage if he knows of its existence, although he may not wish to resort to or rely upon the mortgage security.' Continuing, he said that the rule that two instruments executed at the same time are to be read together was never intended to be so applied as to make a negotiable promissory note, and a mortgage contemporaneously or subsequently executed to secure its payment, as much one instrument as if they were one in form. The rule relates to an entirely different class of cases. A note and mortgage do not constitute a single contract. They are separate instruments executed for different purposes and differ in nature. The mortgage is governed by the law of real property and the note by the law merchant. If the holder of a negotiable note secured by a mortgage chooses to disregard or abandon the mortgage security undoubtedly he may do so, and the note will then be enforced according to its terms and the law of negotiable paper. If the note and mortgage are but one instrument the note will lose its character as a promissory note and become an ordinary contract, merely. This difficulty seems to have presented itself very strongly to the Michigan court in the cases of *Brooke* v. *Struthers* and *Wilson* v. *Campbell*, and the court seems to be unable to dispose of the question, while no other case has been found which passes upon the exact point upon which this court split. The difficulty appears to be in the attempt to apply the rule governing the construction of different instruments executed at the same time. If that rule

is to be applied to such a transaction, the logical conclusion would seem to be that the result of the transaction is simply a contract which cannot be regarded as negotiable. The other alternative is that which appears to have been originally adopted, that the mortgage is simply an incident to the note and is to be regarded as the pledge of any other collateral security would be regarded, so that the note will be enforced by the holder according to its terms and the law merchant, and for his additional security he will have the right to rely on the collateral mortgage which was executed to accompany the paper." The opinion continues with an extended discussion, too long to quote here, examining critically the decisions on each side of the question and reaching the conclusion that the rule does not require the instruments to be construed together as forming only one contract, and that the mere reference to the mortgage and its terms does not incorporate them into the terms of the note.

Among the cases cited in *Page* v. *Ford, supra,* is *Thorpe* v. *Mindeman,* 123 Wis. 149, which contains an excellent discussion of this same question, to what extent, if at all, the general rule that agreements contemporaneously executed, pertaining to the same subject matter, are to be construed together, imports into a promissory note the collateral agreements contained in the accompanying mortgage. In considering the argument that all the collateral agreements of the mortgage become a part of the note by reason of the general rule mentioned, the court said: "This is a decidedly revolutionary proposition. If it be true, both the business world and the courts have been sadly in error for many years. This court held at an early date that a note negotiable on its face retained its negotiable character notwithstanding it was secured by a mortgage upon real estate, and when transferred before due carried the mortgage with it relieved of all equities, (*Croft* v. *Bunster,* 9 Wis. 503,) and that the words 'secured by real estate mortgage,' upon

the face of the note, were not sufficient to charge the assignee with notice of any defense nor of the terms of the mortgage. (*Kelley* v. *Whitney,* 45 Wis. 110, 30 Am. Rep. 697; *Boyle* v. *Lybrand,* 113 Wis. 79, 88 N. W. 904.) If all the agreements contained in every mortgage are, as matter of law, imported into the note these propositions could not be true, for the general rule (except as changed by statute) is that negotiable instruments cannot be bound up and fettered with collateral agreements for the doing of other things besides the payment of money and retain their negotiable character. Upon the principle contended for, the most simple real estate mortgage would deprive the note which it secures of its negotiable character, because it would import into the note one or more collateral agreements which are not for the payment of money. Fortunately, it is not necessary to give so violent a shock to the well understood principles of law governing the negotiability of notes and mortgages. The appellants' contention really results from a confusion of ideas. They lay down the well understood proposition that contemporaneous instruments relating to the same subject matter are to be construed together, and conclude that it follows that a note and mortgage, though separately executed, are one instrument, and that the note is that instrument. The rule that instruments are to be construed together does not lead to this result. Construing together simply means that if there be any provisions in one instrument limiting, explaining or otherwise affecting the provisions of another, they will be given effect, as between the parties themselves and all persons charged with notice, so that the intent of the parties may be carried out and the whole agreement actually made may be effectuated. This does not mean that the provisions of one instrument are imported bodily into another, contrary to the intent of the parties. They may be intended to be separate instruments and to provide for entirely different things, as in the very case before us. The note is given

as evidence of the debt and to fix the terms and time of payment. It is usually complete in itself—a single, absolute obligation. The purpose of the mortgage is simply to pledge certain property as security for the payment of the note. The agreements which it contains ordinarily have no bearing on the absolute engagements of the note but simply relate to the preservation of the security given by its terms, such as the payment of taxes, the insurance of houses, and the like. While the two instruments will be construed together wherever the question as to the nature of the actual transaction becomes material, this does not mean that the mortgage becomes incorporated into the note, nor that the collateral agreements to pay the taxes, or to insure the property, or that the mortgagee might insure in case of default by the mortgagor and have an additional lien therefor, become parts of the note. These agreements pertain to another subject, namely, the preservation, intact, of the mortgaged property. The promise to pay is one distinct agreement, and, if couched in proper terms, is negotiable. The pledge of real estate to secure that promise is another distinct agreement, which ordinarily is not intended to affect in the least the promise to pay but only to give a remedy for failure to carry out the promise to pay. The holder of the note may discard the mortgage entirely and sue and recover on his note, and the fact that a mortgage had been given with the note, containing all manner of agreements relating simply to the preservation of the security, would cut no figure. A pleading alleging such facts would be stricken out as frivolous or irrelevant." A discussion follows of a number of decisions of the courts of other States as well as of those of the Supreme Court of Wisconsin, including the case of *Noell* v. *Gaines,* 68 Mo. 649, in which a provision in the deed of trust as to the time of payment of the note was held to control the terms of the note in the hands of a purchaser with notice. This is the same case in which the dissenting opinion of Hough, J.,

was referred to in *Page* v. *Ford, supra,* and in reference to this same decision it is said in the Wisconsin case that a very vigorous and persuasive dissenting opinion was filed which forms instructive reading on this very question. The court considered the question settled by the Wisconsin Negotiable Instrument law of 1899, which was not in any material respect different, so far as the case was concerned, from ours or that of Massachusetts or New York.

Many decisions have been cited in support of the claim that these bonds specifically state that they are conditioned upon an extrinsic contract, and are therefore not unconditional promises to pay a sum certain in money and are not complete upon their face, and many more cases have been decided on that question. Not all of them can be reconciled, and it would be useless to attempt here a discussion of all of them individually. Much of the difficulty and diversity of decision has been caused by the application of the rule that two instruments executed by the same parties at the same time, relating to the same subject matter, must be construed together as a single contract, and many of the cases have been decided upon a consideration of the note and the mortgage read together as a single contract for the payment of the money and the security of its payment by the mortgage of real or personal property or the deposit of collateral security, the terms of the promise to pay and of the instrument of security being all part of a single contract. As has been pointed out, however, in many of the cases which have been cited, notes and bonds which comply with the requirements of the Negotiable Instrument act are on their face negotiable and are governed by the law merchant—the rules of commercial law—while mortgages or deeds of trust of land are governed by the laws applicable to conveyances of real estate, and mortgages of chattels or pledges of collaterals are governed by the laws applicable to such conveyances or pledges. The two instruments do not relate to the same subject matter. The one

is a simple promise to pay money; the other relates only to the security given for its payment and the method of its enforcement. So far as the bond or note is concerned, its negotiability must be determined from its face, alone. If the reference, by its relation to the other parts of the instrument, its connection with the context or its express language, indicates an intention to make the note, bond or other obligation dependent for its payment upon the terms of another contract, either as to the unconditional nature of the promise to pay, the amount to be paid or the time when it is to be paid, the negotiability of the instrument is destroyed; otherwise it is not affected. In some of the cases in which courts have held the negotiability of the note or bond in question was destroyed by reference to the mortgage securing the instrument, the reference incorporated the language of the mortgage into the note itself, as in *King Cattle Co.* v. *Joseph, supra,* in which the clause in the bonds which was held to deprive them of their negotiability was, "all of which bonds have been issued, or are to be issued under and in pursuance of, and are all equally secured by, and are subject to, an indenture or deed of trust, dated * * * and hereby reference is made to said indenture and the same made a part hereof, with the same effect as if herein fully set forth." The court said: "The mere fact that the bonds were secured by the deed did not change their character or affect their negotiability. * * * They are deprived of negotiability because the deed is expressly made a part of them. It is as though its contents were repeated in them." On re-argument it was further said: "The parties evidently intended to incorporate and include the provisions of the trust deed in the bonds. They wrote into them a notice to an intending purchaser that in determining the nature of the obligation of the maker he could not stop with a reading of the bonds but must also read the trust deed, for the conditions of the trust deed were impressed upon them. In one sense the bonds were

incomplete not because there were unfilled blanks or omissions to be supplied, for there were none, but because on their face the bonds carried notice that the entire contract of the parties was not expressed. It was necessary to look to a separate instrument to be certain as to when and how the maker of the bonds could be compelled to pay them. For these reasons we adhere to the former ruling that the bonds are not negotiable." Nothing of the kind appears in the bonds in question here. The language which is supposed to have the effect in this case of destroying the negotiability of the bonds is contained in the second paragraph. The specific language referred to is that each bond "is entitled to the benefits and subject to the provisions of a mortgage or deed of trust dated January 3, 1910, made by the obligor company to City Trust Company, as trustee." It is further recited that the bond is subject to redemption at 105, and accrued interest, on January 1, 1915, and any interest date thereafter; that the obligor is required to create a sinking fund, to be used in the purchase of the bonds at or below the redemption price, and the principal may become due in case of default or sale under the mortgage or deed of trust, all as provided in the mortgage or deed of trust, to which reference is made for a complete statement. The fourth paragraph of each bond provides that no recourse shall be had for its payment against any stockholder, officer or director of the company by virtue of any statute, all such liability being released by the holder of the bond by its acceptance and also waived and released by the terms of the mortgage or deed of trust, "subject to which this bond is issued."

There is no statement in the bonds that the terms or provisions of the mortgage are made or shall be considered a part of the bonds, and no reference to any provisions of the mortgage or deed of trust except those which have been mentioned. The only word in the bond which lends slight color to the plaintiff in error's claim is the word

"subject." It is manifest that the only purpose of the recital in the bonds was to notify the purchaser that besides the absolute personal obligation which was enforceable against the corporation there was a specific mortgage lien on real estate, to which the purchaser might resort for information as to the situation, extent and value of the security and for the means, right, manner and limitation of the enforcement of such security. The bond specifically recites that it is entitled to the benefits of the mortgage or deed of trust and subject to its provisions, which amounts to no more than that it is entitled to the security of the mortgage or deed of trust subject to its provisions for making the security available. This is the fair and reasonable interpretation of the bonds in this case, particularly in view of the rule stated by Professor Williston in his work on Negotiable Instruments, on page 266: "When the reference presents a questionable problem of interpretation because of the desirability of upholding the negotiability of an instrument which the commercial world treats as negotiable, the courts will incline to interpret the reference as one which does not qualify the corporation's promise to pay but simply refers the holder to the indenture for the determination of his rights with reference to the security." This rule was applied in *Enoch* v. *Brandon, supra, First Nat. Bank* v. *Sullivan,* 66 Wash. 375, and *Utah Lake Irrigation Co.* v. *Allen,* 64 Utah, 511.

It is so well settled that the right to redeem the bonds in whole or in part before maturity, the requirement to create a sinking fund to be used in the purchase of bonds, the acceleration of maturity in case of default or sale under the mortgage, or deed of trust, and the waiver of the statutory liability of stockholders of the corporation have no effect upon the negotiability of the bonds that no more need be said upon the subject.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*