Edmund S. Cummings, Appellant, v. Michigan-Lake Building Corporation, Appellee.

Gen. No. 37,197.

Opinion filed November 27, 1934.

CUMMINGS & WYMAN, for appellant.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, for appellee; HERBERT M. LAUTMANN, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

An assumpsit suit brought upon two bonds of $1,000 each and three interest coupons of $30 each, all dated February 1, 1926, executed by defendant and payable to the bearer or his order on February 1, 1933. The trial court found the issues against plaintiff and entered a judgment for costs against him.

The affidavit of merits states that the defense is:

"1. That the bonds sued upon herein, copies of which are attached to the plaintiff's statement of claim as Exhibits 'A' and 'C,' are two bonds of a series of

3325 bonds of like tenor and effect, described in and secured by that certain trust deed from MICHIGAN-LAKE BUILDING CORPORATION, a corporation, as mortgagor, to FIRST TRUST AND SAVINGS BANK, as trustee, dated February 1, 1926, and recorded in the office of the Recorder of Deeds of Cook County, Illinois, on February 18, 1926, as document No. 9183922, which said trust deed is in words and figures as follows, to-wit: (Here follows a copy of the trust deed.) . . .

"2. That both of the bonds sued upon herein, together with all the other bonds of said issue, contain the following terms and provisions relating to said trust deed:

" 'Both principal and interest are payable in the manner more specifically described in the indenture hereinafter referred to. . . . For a description of the mortgaged property, the nature and extent of the security, and the rights and limitations on the rights of the bondholders, reference is made to said Indenture, to all provisions of which this bond and each coupon hereto attached are subject, with the same effect as if the same were herein fully set forth. . . .

" 'Said Indenture and this bond, as well as all of the other bonds secured by said Indenture, are to be taken and considered together as parts of one and the same contract.'

"3. That by reason of the terms and provisions of said bonds, all of the terms, provisions and covenants of said trust deed inure to the benefit of and are binding upon all of the owners and holders of said bonds and interest coupons secured thereby, including the plaintiff.

"4. That in and by said trust deed, it is provided, among other things, as follows:

" 'AND IT IS EXPRESSLY DECLARED, COVENANTED AND AGREED that all of said bonds are to be issued, certified, delivered, received and negotiated, and that the said

mortgaged property is conveyed to and is to be held and disposed of by the Trustee subject to the following further conditions, covenants and provisions, uses and trusts, and every holder of said bonds and coupons accepts the same subject thereto, that is to say:'

" 'Section 6. . . . Every holder of any of the Bonds and coupons hereby secured (including pledgees) accepts the same subject to the express understanding and agreement that every right of action, whether at law or in equity, upon or under this Indenture, is vested exclusively in the Trustee, and under no circumstances shall the holder of any Bond or coupon, or any number of combination of such holders, have any right to institute any action at law upon any Bond or Bonds or any coupon or coupons, or otherwise, or any suit or proceeding in equity or otherwise, except in case of refusal on the part of the Trustee to perform any duty imposed upon it by this Indenture after request in writing by the holder or holders of at least twenty-five per cent (25%) in principal amount of said Bonds as aforesaid. No action at law or in equity shall be brought by, or on behalf of, the holder or holders of any Bonds or coupons, whether or not the same be past due, except by the Trustee or by the requisite number of bondholders acting in concert under the provisions of this Section for the benefit of all bondholders.' . . .

"8. That in accordance with the terms and provisions of the bonds and interest notes sued upon herein and of the trust deed securing the same, as aforesaid, the plaintiff does not now, nor did he at the time of the filing of this suit, have the right to bring this action, or any action upon said bonds and interest notes and that the exclusive right to sue upon said bonds and interest notes was at the time of the filing of this suit and is now vested in said trustee."

Plaintiff contends that, under the facts and the law, the lower court should have found for him with judgment for $2,090, and interest at seven per cent per annum from February 1, 1933. The position of defendant in this court was that "the bonds sued upon and the trust deed referred to therein are, by the recitals in the bonds themselves, to be taken and considered together as parts of one and the same contract"; that "the trust deed, being part of the same contract with the bond, precludes the bondholder under any circumstances from maintaining this action at law," and that "the limitation upon the bondholders' right to sue is not affected by determining that the bonds are negotiable." This position was in accord with the defense set up in the affidavit of merits. In the very recent decision of our Supreme Court in *Oswianza v. Wengler & Mandell, Inc.*, 358 Ill. 302, the court stated that "the rule which plaintiff in error would invoke as to the necessity for reading all terms of one contract into another made at the same time and as a part of the same transaction does not apply to cases of this kind. *Sturgis Nat. Bank v. Harris Trust and Savings Bank, supra* (351 Ill. 465), and cases there cited." Since that decision defendant has changed its position and has, by leave of court, filed a "supplemental memorandum," in which it calls attention to the *Oswianza* decision and "submits the following propositions: (a) That the question of negotiability is not involved in this case; (b) That the bond in this case contains appropriate language to incorporate therein by reference the no-action clause of the trust deed, and that under the holding in the *Oswianza* case, *supra*, the judgment of the lower court should be affirmed."

Our decision is controlled by the *Oswianza* case, wherein the trust deed contained the same provisions

as are relied upon by defendant in the instant case, and the bonds contained the following language:
. ''Said trust deed and this bond, as well as all the other bonds aforesaid, are to be taken and considered together as parts of one and the same contract. . . . Both principal and interest bear interest after maturity thereof at the rate of seven per cent (7%) per annum and are payable in the manner described in the trust deed. . . . For a description of the mortgaged property and the nature and extent of the security reference is made to said trust deed, to all of the provisions of which this bond and each coupon hereto attached are subject, with the same effect as if said trust deed were herein fully set forth.''

In the instant case the bonds contain six paragraphs. The second reads as follows:

''This Bond is one of a series of 3325 first mortgage bonds numbered consecutively from 1 to 3325, both inclusive, of like form, tenor and effect, except as to denomination, number and time of maturity thereof, amounting in the aggregate to the principal sum of Two million eight hundred thousand dollars ($2,800,000) payable serially as set forth in said Indenture, the payment of all of which first mortgage bonds, together with the interest thereon, is equally and ratably, and without priority or preference of any one first mortgage bond over any other first mortgage bond for any reason whatsoever, secured by an Indenture in the nature of a Trust Deed bearing even date herewith, duly executed, acknowledged and delivered by the Company to the First Trust and Savings Bank, an Illinois corporation, of Chicago, Illinois, as Trustee, and recorded in the Office of the Recorder of Deeds of Cook County, Illinois. Said Indenture also secures the payment of a series of general mortgage bonds, in the aggregate principal amount of Four hundred thousand dollars ($400,000), subject and subordinate to said

first mortgage bonds. For a description of the mortgaged property, the nature and extent of the security, and the *rights and limitations* on the rights of the bondholders, reference is made to said Indenture, to all provisions of which this bond and each coupon hereto attached are subject, with the same effect as if the same were herein fully set forth." (Italics ours.) In the "supplemental memorandum" defendant contends that the bonds, by reason of the words which we have italicized, "contain appropriate language to incorporate therein by reference the no-action clause of the trust deed," and argues that the *Oswianza* case sustains this contention. We do not agree with the contention nor argument. All of the provisions contained in the second paragraph of the bonds have to do with the trust deed and the rights conferred by it upon the bondholders, and the limitations on the rights of the bondholder if he would seek to enforce the trust deed. As stated by the court in *Enoch v. Brandon,* 249 N. Y. 263, 269, wherein a similar question was involved, a purchaser scanning the bonds would think that the obligor was speaking solely of the security, and "he would interpret the statement that the bonds were secured by and entitled to the benefits and subject to the provisions of the mortgage, as meaning that a foreclosure or other relief might be had thereunder only subject to its provisions." In the *Oswianza* case the court stated that negotiability was not a prime factor in determining whether the plaintiff had a right to sue at law, but that there was no language in the bond which fairly incorporated, by reference, the no-action clause of the trust deed, and that, therefore, the plaintiff, the owner of bonds, had a right to sue at law. In its opinion the court said:

"It follows that if there be read into the bonds in this case the no-action provisions of the trust deed it must be by an appropriate reference found in the bond.

. . . This case resolves itself into the question whether there is in the bond language which may reasonably be said to incorporate therein, by reference, the no-action clause of the trust deed. . . . The language is so phrased and arranged as to strongly indicate that the obligor was speaking solely of the security. The purchaser of these bonds would not be impressed with any other thought. It would not occur to him, from this language, that in case the bonds were defaulted on maturity, as is true here, he might be unable to collect because of some provision in the trust deed limiting his power to sue at law. Enforcement against the security and a suit at law are matters of radically different import, and to destroy the right to sue at law, a provision of such character in the trust deed must be included in the bond, expressly or by *clear* reference thereto. *Sturgis Nat. Bank v. Harris Trust and Savings Bank, supra* (351 Ill. 465) ; *Enoch v. Brandon,* 249 N. Y. 263, 164 N. E. 45. . . . The importance of bonds of this character as commercial paper requires that limitation on the right to sue, appearing in another instrument, be so *clearly* referred to in the bond that the purchaser of the bond will not be deceived but will be notified that he is to look further to know his rights as a bondholder. If a principle of public policy be invoked, it is quite important that in the traffic of bonds the prospective purchaser thereof know from the bond what search of the trust deed or mortgage is necessary in order to learn his rights. . . . If the common law rights of the holder are to be limited it must be done by appropriate reference in the bond to the provisions of the trust deed or mortgage, that he may have warning that his right to sue in case of default is limited by something not appearing in the bond itself.'' (Italics ours.)

In *Enoch v. Brandon, supra,* the court held (p. 268) that if the meaning is doubtful, the construction most

favorable to the bondholder must be adopted. In the instant case the six paragraphs of the bonds were drafted, apparently, upon the theory that the bonds and the trust deed were parts of the same transaction and that the terms of the trust deed would be read into the bonds, but defendant is now forced, by the decision in the *Oswianza* case, to give to the words, in the bonds, which we have italicized, a strained and unwarranted interpretation. As stated in that case, "to destroy the right to sue at law, a provision of such character in the trust deed must be included in the bond, expressly or by clear reference thereto." When the italicized words are considered in connection with the six paragraphs as a whole, it seems, to us, idle to argue that they measure up to the requirements of the rule laid down in the *Oswianza* case. We hold that the language in the bond upon which defendant relies, does not include by clear reference the no-action clause of the trust deed.

There is another point in connection with the bond that should be considered in determining the question before us. The record contains a photostatic copy of the bond, which is a facsimile of the original. The provisions in the bond cannot be read by eyes of normal strength without the aid of a magnifying glass. In addition, parts of the provisions are blurred by a large design, an ornamental background in the form of a sunburst. Save as they are contained in the photostatic copy, the bill of exceptions fails to show the provisions of the bond, and it was with some difficulty that we were able to find the italicized words in the photostatic copy, even with the use of a magnifying glass. A careful inspection of the face of the bond leads to the conclusion that its makers did not intend that a purchaser should have a reasonable chance to read the provisions of the bond. If the makers of the bonds intended to take away the important right of a

purchaser to sue thereon, and if they also intended to practice common honesty and fair dealing toward the general public, who constitute the great mass of prospective purchasers, the intent to take away the right would have been fairly and plainly stated, and would not have been buried in a mass of words having no direct bearing thereon. The artful manner in which the face of the bond in the instant case is designed is an additional reason why the purchaser was not given a clear warning that his right to sue at law in case of default was limited by something appearing in the trust deed.

The judgment of the municipal court in the instant case must be reversed, and as the sole defense to the action was that plaintiff had no right to bring an action at law against defendant, judgment will be entered here in favor of plaintiff and against defendant in the sum of $2,356.96, which includes $2,090 principal and $266.96 interest.

*Judgment reversed and judgment here in favor of plaintiff and against defendant in the sum of $2,356.96.*

GRIDLEY, P. J., and SULLIVAN, J., concur.