Abingdon Bank and Trust Company, Appellee, v. Shipplett-Moloney Company and Patrick Moloney, Appellants.

**Gen. No. 9,778.**

at the May term, 1942. Heard in this court Opinion filed September 17, 1942.

Leo P. Baird, of Galesburg, for appellants.

Burrel Barash, of Galesburg, for appellee.

Mr. Justice Dove delivered the opinion of the court.

The question in this case is whether two instruments upon which appellee obtained judgment against appellants in the circuit court of Knox county, are negotiable instruments upon which appellants are liable. The judgment for $2,321 and costs was entered after motions to strike the complaint were overruled and appellants failed to answer. The cause is here on their appeal.

The facts alleged in the complaint and admitted by the motion to strike, are as follows: G. A. Shipplett and Patrick Moloney were partners in a retail hardware store at Abingdon. They did business under the firm name of Shipplett-Moloney Company. The two instruments sued on were payable to the partnership by the name and style above mentioned. One of them reads:

"$700.00 Abingdon, Illinois. May 1, 1926

One yr. four months after date for value received, I (we) promise to pay to Shipplett-Moloney Co., or order Seven Hundred Dollars at the First National Bank, Abingdon, Illinois, with interest at seven per cent per annum from date until paid.

This note (with 1 other) is given for John Deere Tractor and I hereby agree that title thereto, and to all repairs and extra parts furnished therefor, shall remain in the payee, owner or holder of this note until this and all other notes given therefor shall have been

paid in money. If at any time he shall deem himself insecure, or if said property or any part thereof is levied upon, or the undersigned attempts to sell or remove the same, then the owner or holder hereof may declare this and every other such note due, and may take possession of said property, and sell the same at public or private sale, with or without notice, pay all expenses incurred thereby and apply the net proceeds on this and other notes given for the purchase price thereof. In consideration of the use of said property, I agree to pay any balance remaining unpaid on this or any other such note after the net proceeds of such sale are applied, and if said property, or any part thereof, shall be lost, damaged or destroyed I shall not on that account be entitled to a recission of this contract or abatement in price.

In Consideration Whereof, I hereby authorize irrevocably, any attorney of any Court of Record, in term time or vacation to enter my appearance therein, at any time after date hereof, to waive all process and confess judgment or judgments in favor of the legal holder hereof against me alone, or jointly with any or all other signers hereof, for such amount as may appear to be unpaid thereon, and costs, with twenty-five dollars attorney's fees, and consent to immediate issue of execution on the judgment as confessed, and waive all errors in the rendition thereof, and ratify and confirm all that my said attorney may do by virtue hereof.

The endorsers, sureties and guarantors severally waive presentment for payment, protest, notice of non-payment and diligence.

Oscar W. Swanson.''

The other instrument sued on is for $550, dated June 1, 1926, and is signed ''J. E. Whitenack.'' In all other respects it is identical with the one signed by Swanson, except that it refers to a John Deere Model R. tractor. The partnership sold and endorsed

the notes to the First National Bank of Abingdon, which bank made a like transfer of them to the First State and Savings Bank, and appellee acquired them from the latter bank. It is not claimed that appellee is not a bona fide holder thereof for value before maturity. In February 1930, Shipplett-Moloney Company was incorporated. Moloney subscribed for 200 shares of the capital stock, Shipplett for 49 shares, and one other share was issued to a third party. In payment for the 249 shares, the corporation, at a stockholders' meeting, took over the assets and assumed the liabilities of the partnership. G. A. Shipplett died in August 1930. His estate is insolvent. The original complaint was filed December 6, 1934.

The parties are in agreement that if the instruments sued on are negotiable instruments appellants are liable. Reversal is urged on the ground that they are neither negotiable instruments nor promissory notes. The same ground was included in the motions to strike. Appellants admit that the first paragraph of each instrument, standing alone, answers all the requirements of a negotiable promissory note, but they claim that because of the provisions of the second paragraph, the instruments are rendered mere non-negotiable contracts or choses in action, upon which they are not liable. This is the determinative issue.

The pertinent provisions of the Negotiable Instruments Act of 1907 (Ill. Rev. Stat. 1941, ch. 98, par. 21 *et seq.* [Jones Ill. Stats. Ann. 89.021 *et seq.*]) which is the governing statute, are found in its first five sections. In order for an instrument payable in money to be negotiable, it is required by section 1 that it must contain an unconditional promise or order to pay a sum certain in money, and that it must be payable on demand or at a fixed or determinable future time. By section 2 the sum payable is a sum certain within the meaning of the act, although it is to be paid: (1) with interest; or (2) by stated instalments;

or (3) by stated instalments, with a provision that upon default in payment of any instalment, or of interest, the whole shall become due; or (4) with exchange, whether at a fixed rate or at the current rate; or (5) with costs of collection or an attorney's fee in case payment shall not be made at maturity. Section 3 provides, among other things, that an unqualified order or promise to pay is unconditional, within the meaning of the act, though coupled with a statement of the transaction which gives rise to the instrument. Section 4 provides that an instrument is payable at a determinable future time, within the meaning of the act, which is expressed to be payable: (1) at a fixed period after date or sight; or (2) on or before a fixed or determinable future time specified therein; or (3) on or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain; and that an instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect. Section 5 provides, among other things, the negotiable character of an instrument otherwise negotiable is not affected by a provision which authorizes the sale of collateral securities in case the instrument be not paid at maturity or by a provision which authorizes a confession of judgment.

A recent expression of our Supreme Court upon the question of negotiability is found in *Sturgis Nat. Bank v. Harris Trust & Savings Bank,* 351 Ill. 465, and is relied upon in some measure by each of the parties. That suit was to recover certain stolen bonds secured by a deed of trust. The bonds were in the hands of the Harris Trust & Savings Bank as bailee for an innocent holder. The question was whether the bonds were non-negotiable because of a reference to the deed of trust. It is said in that case (omitting citations): "The negotiability of an instrument must be determined from the writing itself. It cannot depend

upon extrinsic evidence. The reference to another writing which will destroy the negotiability of an instrument, otherwise negotiable, must be of a kind which in some respect qualifies or makes uncertain or conditional the promise. Reference in a bond, note or other obligation for the payment of money, otherwise negotiable, to the fact that it is secured by a mortgage or trust deed or by a deposit of collateral securities; or that the consideration for it is a promise to pay money for services to be rendered in the future; or to advance money in the future; or is the purchase of personal property to be paid for by a series of notes maturing on certain fixed dates, all to become due on the failure of the maker to pay any one of the notes, the title of the property to remain in the payee, the vendor, until all the notes are paid, all of the notes being equally and ratably secured on the property; or is a contract whose terms are not mentioned; or that it is issued as one of a series of like obligations, all of which are equally secured by a mortgage or trust deed or other collateral agreement, and that each is equally entitled to the privileges and subject to the provisions of the trust deed; does not affect the negotiability of the instrument containing the reference. In all such cases where the reference is general and no particular provision of the mortgage, trust deed or other agreement for collateral security is mentioned which modifies the unconditional promise to pay, the amount to be paid or the time when it is to be paid, the negotiability of the note is not affected. Such a reference does not make the instrument referred to, a part of the promise to pay or indicate an intention to impose any condition upon that promise. Each case must be determined on its particular facts, and the question in each case is, Does the language of the particular instrument modify the promise to pay by subjecting it to the possibility of a condition contained in the instrument referred to? The terms of the in-

strument referred to are immaterial. The question is whether the terms of the reference are such as lead to the inference that the instrument referred to contains a condition qualifying the absolute promise to pay or the amount or time of such payment.'' The opinion analyzes and adopts the doctrine announced in several of the cases cited therein, and others, summarizing with the statement that ''notes and bonds which comply with the requirements of the Negotiable Instrument Act are on their face negotiable and are governed by the law merchant—the rules of commercial law—while mortgages or deeds of trust of land are governed by the laws applicable to conveyances of real estate, and mortgages of chattels or pledges of collaterals are governed by the laws applicable to such conveyances or pledges. The two instruments do not relate to the same subject matter. The one is a simple promise to pay money: the other relates only to the security given for its payment and the method of its enforcement. So far as the bond or note is concerned, its negotiability must be determined from its face, alone. If the reference, by its relation to the other parts of the instrument, its connection with the context or its express language, indicates an intention to make the note, bond or other obligation dependent for its payment upon the terms of another contract, either as to the unconditional nature of the promise to pay, the amount to be paid or the time when it is to be paid, the negotiability of the instrument is destroyed; otherwise it is not affected.''

In *Hunter v. Clarke,* 184 Ill. 158, also relied upon by appellee, it appeared that the principal note and two interest notes were secured by a real estate mortgage. The mortgage provided that in case of neglect or refusal to pay any of the notes when due, or in case of waste or nonpayment of taxes or assessments, or neglect to insure or keep insured the buildings on the premises, the principal note, with all accrued in-

terest thereon, should become due and payable at the option of the legal holder thereof, and the mortgage might then be foreclosed. Following the words of promise in the principal note were these words: ''according to the tenor of a certain mortgage deed, bearing even date herewith.'' The court, assuming the note and mortgage were to be construed as one instrument so far as the stipulations of the mortgage might affect the note, held that the negotiability of the note was not affected by the provisions of the mortgage. In the course of its opinion (omitting citations) the court said: ''A note payable by installments is negotiable, although the whole is to become due upon a failure in the payment of an installment or the nonpayment of interest. (*Chicago Railway Equipment Co. v. Merchants' Nat. Bank,* 136 U. S. 268.) So a note payable at a date certain or sooner, upon the happening of some specified event, is held to be due at such date and is negotiable; as for example, a note due at a fixed day, or before, if made out of the sale of certain property or upon making a collection, or in case of the death of the maker before such day. There can be no difference, in principle, between the exercise of an option by the maker to pay before a certain day, or a provision that the notes shall be due upon the happening of some event prior to the date fixed and an option of the holder to declare it due upon the occurrence of some event. . . . The other proposition that the stipulations of the mortgage render the amount promised to be paid by the note uncertain, is not correct. The amount is not increased in any event, but the note is to be satisfied by the sum certain therein named. The provisions of the mortgage for the allowance of costs, taxes, assessments, insurance and attorney's fees apply only in case of foreclosure and do not add to the amount of the note.'' Cited with approval in the recent case of *Conerty v. Richtsteig,* 379 Ill. 360.

Other cases cited by appellant announce similar principles to those in the two cases above mentioned. All of them are cases where the reference to security was embodied in a separate instrument, except the case of *Chicago Railway Equipment Co. v. Merchants' Nat. Bank, supra,* in which, like the case at bar, the reference to security and to companion notes are contained in the particular instrument itself. In that case the notes sued on were part of an issue with a title retaining clause. The court held that negotiability was not affected by a provision that upon failure of the maker to pay any one of the notes the others should become due and payable. It is manifest that the same principles must be applied whether the reference is by way of a recital in the instrument itself or by reference to a separate document. The test is not whether the promise to pay and the reference to security are contained in the same or in different instruments, but in either case it is whether the reference qualifies or renders uncertain or conditional the promise to pay, the amount to be paid, or the time of payment.

The instruments sued on, according to their terms, may mature at any time the owner or holder may deem himself insecure or if the property therein described is levied upon or if the conditional vendee attempts to sell or remove it. Counsel for appellants say they do not object to that provision because it renders uncertain the time of maturity, nor because it renders the promise to pay conditional but do object to it for the reason that it renders uncertain the amount to be paid at maturity. Referring particularly to an exercise of the option under the insecurity clause, they call attention to the fact that the amount of the note referred to in the second paragraph of the instrument sued on is not stated therein and argue that this renders uncertain the amount to be paid, and that to determine such amount would require resort to extrinsic evidence. They invoke the holding in *Sturgis Nat. Bank v. Har-*

*ris Trust & Savings Bank, supra,* to the effect that the negotiability of an instrument must be determined from the writing itself, and that it cannot depend upon extrinsic evidence.

Appellants lose sight of the fact that the amount unpaid on the note referred to in the second paragraph of the note sued on, and extrinsic evidence thereof, could have no effect upon the amount of the promise in or the amount unpaid on the note sued on. The effect of an election to exercise the option under the insecurity provision can be no different than an election under a provision for acceleration on account of nonpayment. In either case the note is put in default by the exercise of the option, which operates only to accelerate maturity, without in any way changing or making uncertain the amount promised to be paid or the amount due or unpaid under the note sued on and this is true, regardless of the amount of the other note or the amount due or unpaid thereon. This view accords with the holdings in *Sturgis Nat. Bank v. Harris Trust & Savings Bank, supra; Hunter v. Clarke, supra;* and *Chicago Railway Equipment Co. v. Merchants' Nat. Bank, supra.* Especially adaptable are the following expressions in *Hunter v. Clarke, supra:* ''The other proposition, that the stipulations of the mortgage (here the second paragraph of the note) render the amount to be paid by the note uncertain, is not correct. The amount is not increased in any event, but the note is to be satisfied by the sum certain therein named.''

*Smith v. Myers,* 207 Ill. 126, relied upon by appellants was a case where a note, following the usual promise to pay a certain sum at a time designated, contained the words: ''Value received, with interest at six percent per annum and taxes.'' The court held the uncertainty as to the amount of the taxes rendered the instrument non-negotiable. That uncertainty went to the amount promised by the instrument to be paid.

That amount was not fixed by the instrument itself nor were there any means found in the instrument by which the amount could be fixed. That in order to determine the amount resort to extrinsic evidence was necessary and therefore, the instrument was not a promissory note. The situation in the case at bar is different. Nothing in the second paragraph of the notes sued on has any such effect. That case is not applicable here.

In our opinion the instruments sued on are negotiable promissory notes. The judgment of the trial court is accordingly affirmed.

*Judgment affirmed.*